Commonwealth *v.* Ali, Appellant.

464

Argued March 23, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*David B. Washington,* for appellant.

*John Regis McGinley, Jr.,* Assistant District Attorney, with him *Carol Mary Los* and *Robert L. Campbell,*

Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE POMEROY, May 27, 1970:

At a nonjury trial, appellant was convicted of having issued a worthless check in violation of §854 of The Penal Code of June 24, 1939, P. L. 872, 18 P.S. §4854. His motions in arrest of judgment and for a new trial were denied and he was sentenced to imprisonment for a term of 60 days to 23 months. On appeal to the Superior Court, his judgment of sentence was affirmed in a per curiam decision to which Judge SPAULDING filed a dissenting opinion in which Judge HOFFMAN joined. 214 Pa. Superior Ct. 512, 257 A. 2d 370 (1969). We granted allocatur.

The worthless check upon which the prosecution was based was issued to the Totem Lumber Company in the amount of $349.95. The basic facts surrounding presentation of the check were not disputed. They are that on September 9, 1966, appellant signed a blank check and gave it to his employee, one Garmusa; that Mr. Garmusa took the check to the Totem Lumber Company for the purpose of purchasing supplies for appellant; that at the Lumber Company, the amount of the check was filled in by or at the direction of Garmusa, and accepted by the Lumber Company for materials delivered to Garmusa; and that the materials delivered to Garmusa were itemized on a sales slip, which showed a total cost of $349.95. The check was twice returned by the drawee bank for insufficient funds and was never paid.

Appellant testified that on the preceding day, September 8, he had ordered paint, lumber and nails by telephone from one Nick Grande, an employee of Totem Lumber Company; that Grande told him that the total cost of the materials would be about $80 but that as

Grande could not determine the exact amount, appellant could send a signed, blank check with the man who would pick up the materials, and the check could be completed at the time the materials were called for; and that he had signed a blank check and given it to Garmusa for this purpose. Appellant denied ordering or receiving any materials other than paint, lumber and nails costing about $80. Called by the Commonwealth in rebuttal, Grande denied requesting appellant to send a blank check, and stated that he could not recall whether appellant had personally placed an order over the telephone. Garmusa did not testify.

Upon this evidence, the trial court found that all elements of the crime had been established by the Commonwealth and found appellant guilty. We do not agree.

Under §854 of The Penal Code the three essential elements of the crime of issuing a worthless check are: (1) making, drawing, uttering or delivering a check; (2) intent to defraud; and (3) knowledge at the time of making the check that the maker or drawer has insufficient funds for the payment thereof in, or credit with, the bank or other entity upon which the check is drawn. Under the second paragraph of §854, the making, drawing, uttering or delivering of a check, payment of which is refused by the drawee,[1] "shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in or credit with" the drawee, unless the check (together with any interest or protest fees) is made good within ten days after the maker receives notice that the check has not been paid. Thus the Com-

---

[1] Although "drawee" is used in §854 to refer both to the entity or person upon whom the check is drawn and the person to whom it is payable, the term "drawee" technically refers only to the former while the latter is properly the "payee". Drawee is used in this opinion only in its technical sense.

monwealth may establish a prima facie case of guilt of this crime by introducing evidence that (1) the defendant was the maker of a worthless check, and (2) that he did not make it good within ten days of receipt of notice that it had not been paid. It seems likely that the trial court relied upon this statutory scheme of proof in finding appellant guilty, since there was no direct evidence either of his intent to defraud or of his knowledge of insufficient funds.[2]

In our opinion, however, the Commonwealth did not sustain its burden of proving that appellant made or drew a worthless check. While appellant signed the instrument, he did not himself complete it by filling in the amount of $349.95. Making a check or other negotiable instrument is more than merely signing it; it is issuing a completed instrument, or an incomplete instrument with authority in another to complete it. In order for the finder of fact to determine that appellant made the check in the amount of $349.95, evidence was required that he authorized the check to be so completed. No such evidence was introduced; the only testimony on the subject was that of appellant himself that he intended and expected the check to be made out for approximately $80. It may be folly and negligent to sign a blank check or other negotiable instrument and entrust it to another for completion, and doing so may very well entail liability to a holder in due course,[3]

---

[2] Under our view of this case we need not determine whether the effect of the second paragraph of §854 is merely to enable the Commonwealth to withstand a demurrer to the evidence where it produces no direct evidence of intent or knowledge, or whether it is to create an issue for the finder of fact on these two elements even in the face of contrary evidence, and we express no opinion on this question.

[3] See, e.g., §§3-115, 3-406 and 3-407 of the Uniform Commercial Code, 12A P.S. §§3-115, 3-406 and 3-407. Section 3-115 places the burden on the maker to prove that the terms of the instrument as

but it does not per se render the maker guilty of a crime. The prima facie evidence provision of the second paragraph of §854 does not help the Commonwealth here, and direct evidence of authority was therefore necessary. Since it was not adduced, and the only evidence was that there was no authority, the elements of the crime were not made out.

The order of the Superior Court is reversed, the judgment of sentence is vacated, and the motion in arrest of judgment is granted and the defendant is discharged.

Mr. Chief Justice BELL did not participate in the decision of this case.

---

completed by another were unauthorized, but this civil standard of proof is not governing in a criminal prosecution.