348 A.2d 728

COMMONWEALTH of Pennsylvania

v.

Betty HORTON, Appellant.

Supreme Court of Pennsylvania.

Argued Oct. 21, 1975.

Decided Nov. 26, 1975.

Defender Assn. of Philadelphia, Benjamin Lerner, Defender, Leonard N. Sosnov, Asst. Defender, John W. Packel, Chief, Appeals Div., Philadelphia for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Deborah Glass, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

216

## OPINION OF THE COURT

NIX, Justice.

■ Appellant, Betty Horton, a mother [1] and welfare recipient, was convicted in the Municipal Court of Philadelphia of passing a worthless check under the Act of June 24, 1939, P.L. 872, § 854, as amended, 1971, December 1, P.L. 587, No. 154, § 1, 18 P.S. 4854 (Supp.1972–73). [2] After the imposition of a sentence of one year probation [3] the cause was appealed to the Court of Common Pleas of Philadelphia by means of a writ of certiorari [4] resulting in an affirmance of the Municipal Court ruling. The Superior Court affirmed without opinion and we granted allocatur. We now reverse the judgment and discharge the appellant.

On April 7, 1972, Mrs. Horton entered a check cashing agency owned by Mr. Joseph Gross and presented for payment a check in the amount of $265.00. The instrument was a printed check of the Farragut Hall Corporation, signed by one "Q. V. Clark", drawn on the First National Bank of Philadelphia and made payable to the appellant. When Mr. Gross presented the check for payment to his bank it was dishonored. It was determined that the First National Bank had been defunct for fifteen years and that the Farragut Hall Corporation was non-existent. Mrs. Horton had previously registered with the check cashing agency and they were in possession of her address and telephone number. Mr. Gross, after unsuccessfully attempting to contact appellant, sent a registered letter demanding payment. A return re-

1. Mrs. Horton is a mother of four children and is also caring for two of her sister's children.

2. This crime has now been recodified as 18 Pa.C.S. § 4105.

3. An appeal from a sentence of probation may be had to challenge matters leading to the conviction. *Commonwealth v. Gilmore*, Pa., 348 A.2d 425 (Filed October 30, 1975).

4. Const. sched. art. 5, § 26.

ceipt was received but payment was not made. After a demurrer to the Commonwealth's evidence was denied the defense rested and the verdict of guilt entered.

■ The issue raised is the sufficiency of the evidence to sustain the verdict of guilt. Section 854 [5] defining the instant offense requires three elements to be established. There must be (1) a making, drawing or delivering of a check with, (2) intent to defraud, (3) knowing at the time that the maker or drawer has not sufficient funds in, or credit with the depository for the payment of such a check. *Commonwealth v. Ali*, 438 Pa. 463, 265 A.2d 796 (1970). The appellant concedes that the record fully supports a finding that the Commonwealth established the first element but asserts that there is no basis for concluding that the second and third elements have been proven. In response, the Commonwealth argues that the second and third elements were established by proof that appellant failed to make good on the obligation, that she refused to respond to Mr. Gross' attempts to communicate with her and that the defense failed to supply any explanation why Mrs. Horton should have been obtaining payment on a $265.00 check from a non-existent corporation. However, the record also establishes that the check appeared to be regular on its face, that Mrs. Horton was known to the manager of the check cashing agency to whom she tendered the check for payment, that she was aware that the agency was in possession of her home address and phone number and that there was no attempt on Mrs. Horton's

5. That section provides in pertinent part:
   "Whoever, with intent to defraud, makes, draws, utters or delivers any check, draft, or order for the payment of money, upon any bank, banking institution, trust company, or other depository, knowing, at the time of such making, drawing, uttering, or delivering, that the maker or drawer has not sufficient funds in, or credit with, such bank, banking institution, trust company, or other depository, for the payment of such check, . . ."
   Act of June 24, 1939, P.L. 872, § 854, as amended 1971, December 1, P.L. 587, No. 154, § 1, 18 P.S. § 4854 (Supp.1972–73).

part to conceal her true identity when she offered the instrument for payment.

First, we reject the Commonwealth's suggestion that an inference of guilt can be drawn from Mrs. Horton's failure to explain her possession of this check. To rule otherwise would permit the prosecution to be relieved of its obligation to prove its case, unaided by the defendant. Compare, *Commonwealth v. Owens*, 441 Pa. 318, 325–326, 271 A.2d 230, 233–234 (1970).[6] Further, we also find unacceptable the Commonwealth's intimation that the possession by a person in appellant's circumstances of a check purportedly issued by a defunct corporation supports the requisite guilty knowledge. Experience teaches that all too frequently it is the poorer and less trained citizen within our society who is victimized by bogus schemes in which non-existent or defunct corporations are used as ploys. Nor can we agree that an inference of guilt is justified because of appellant's reluctance to respond to Mr. Gross' attempts to communicate with her or her failure to satisfy the obligation. After learning of the dishonor, Mrs. Horton's actions

6. "The Court has also refused to accept the suggestion that since the source of his drugs is perhaps more within the defendant's knowledge than the Government's, it violates no rights of the defendant to permit conviction based on possession alone when the defendant refuses to demonstrate a legal source for his drugs. *Leary v. United States,* supra, 395 U.S. [6] at 32–34, 89 S.Ct. [1532], at 1546–1547, 23 L.Ed.2d 57 at 79–81. See also *Tot v. United States,* supra, 319 U.S. [463] at 469–470, 63 S.Ct. [1241], at 1245–1246, 87 L.Ed. 1519 at 1525, 1526. The difficulties with the suggested approach are obvious: if the Government proves only possession and if possession is itself insufficient evidence of either importation or knowledge, but the statute nevertheless permits conviction where the defendant chooses not to explain, the Government is clearly relieved of its obligation to prove its case, unaided by the defendant, and the defendant is made to understand that if he fails to explain he can be convicted on less than sufficient evidence to constitute a prima facie case. See *Tot v. United States,* supra, 319 U.S. at 469, 63 S.Ct. [1241], at 1245, 87 L.Ed. at 1525."
*Turner v. United States,* 396 U.S. 398, 408 n. 8, 90 S.Ct. 642, 648, 24 L.Ed.2d 610 (1970).

might well have been occasioned by her inability to repay the money due. Absent evidence to establish the ability to meet the obligation an inference of guilt is totally unwarranted.[7] Thus, after assessing all of the evidence, it is apparent that the Commonwealth was unable to present sufficient direct evidence either of appellant's intent to defraud or knowledge of the insufficient funds to overcome the presumption of innocence.

The Court of Common Pleas, although implicitly acknowledging the insufficiency of the direct evidence to establish the second and third elements of the offense, relied upon the statutory inference to sustain the action of the Municipal Court.[8] The second paragraph of Section 854 provides in pertinent part:

"In any prosecution under this section, the making, drawing, uttering or delivering of a check, . . ., payment of which is refused by the drawee because of lack of funds or credit, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in, or credit with, such bank . . . *unless such maker or drawer shall* have paid the drawee thereof the amount due thereon . . ., within ten (10) days after receiving notice." (Emphasis added).

Appellant argues first that under the language of the section, the statutory inference has no applicability where the prosecution is being brought against a negotiator of an instrument who was not a maker or a drawer. Thus it is urged that this statutory scheme of proof

7. To the contrary, the evidence in this record established that appellant was receiving public assistance and was attempting to raise six children.

8. In *Commonwealth v. Ali,* 438 Pa. 463, 467 n. 2, 265 A.2d 796, 798 (1970), we left open the question whether the effect of this statutory scheme of proof merely enables the Commonwealth to withstand the demurrer to the evidence where there is an absence of direct evidence of intent or knowledge or whether it is to create an issue for the finder of fact on these two elements even in the face of contrary evidence. In view of our disposition here we again pass this question to another day.

was not properly available to the prosecution in the instant cause where appellant was alleged to have been the payee.[9]

While we do not accept appellant's view that the language of the provision is free from all ambiguity [10] we do conclude after resorting to the rules of statutory construction that the legislature did in fact intend to limit the inference to a maker or drawer of an instrument.[11]

9. In the alternative, it is asserted that an interpretation which would apply the statutory inference to a payee would be unconstitutional under the reasoning of *Barnes v. United States*, 412 U. S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973); *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969).

In view of our agreement that the legislature did not intend to apply this statutory inference to prosecutions of payees, the constitutional question will not be discussed in this opinion. We note however that our recent opinions of *Commonwealth v. DiFrancesco*, 458 Pa. 188, 329 A.2d 204 (1974); *Commonwealth v. Turner*, 456 Pa. 116, 317 A.2d 298 (1974) are most informative on this issue. See also *Commonwealth v. Simmons*, 233 Pa.Super. 547, 336 A.2d 624 (1975); *Commonwealth v. Smith*, 233 Pa.Super. 535, 335 A.2d 814 (1975); *Commonwealth v. Burke*, 229 Pa.Super. 176, 324 A.2d 525 (1974).

10. The first clause of the paragraph ("In any prosecution under this section, . . . uttering or delivering . . .") viewed in isolation would appear to encompass any prosecution under this section.

11. Under the new Crimes Code, the presumption has been expressly limited to the issuer of the instrument. 18 Pa.C.S. § 4105. It is clear from this statute that "issuer" refers to the drawer or maker of the instrument in contradistinction to the payee. Section 4105 provides in pertinent part:

"(a) Offense defined.—A person commits an offense if he issues *or passes* a check or similar sight order for the payment of money, knowing that it will not be honored by the drawee.

(b) Presumption.—For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, an issuer is presumed to know that the check or order (other than a post-dated check or order) would not be paid, if:

(1) the issuer had no account with the drawee at the time the check or order was issued; or

(2) payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within ten days after receiving notice of that refusal." (Emphasis Added)

■ First, the rule requiring strict construction of penal provisions [12] would argue against the broad interpretation urged by the Commonwealth. Secondly, the Commonwealth's interpretation would fail to give any significance to the ten day exception clause which refers specifically, only to a maker or a drawer.[13] Accepting the Commonwealth's interpretation and observing the rule of construction that exceptions shall be construed to exclude all others [14] would lead to the absurd result [15] that the inference would not apply to a drawer or maker who paid within ten days but would continue to apply to a payee negotiator in spite of repayment within the same period. There is no rational basis which would support such a distinction in treatment between a maker or drawer and a payee. To the contrary, it is quite understandable why the legislature would have intended to exclude a payee negotiator from the purview of this paragraph of the section.[16]

■ Where a standardized inference is to be employed, the inference to be drawn may not be tenuously connected to the facts that must be proven. *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380

12. 1 Pa.C.S. § 1928(a)(1).

13. " . . . unless such maker or drawer shall have paid the drawee thereof the amount due . . . , within 10 days.

14. 1 Pa.C.S. § 1924.

15. Courts may not presume that the General Assembly intends an absurd result. 1 Pa.C.S. § 1922(1).

16. Our research has failed to reveal any appellate decision within this jurisdiction which has addressed this particular issue. Counsel has called to our attention one lower court opinion which is in accord with the view expressed by the court below. *Commonwealth v. McBray*, 86 Montg.Co.L.R. 238 (1966). In reviewing the decisions of other jurisdictions it is significant that all involving a similar type of statutory inference pertained to prosecutions of makers or drawers of the instrument. The only opinion we have encountered which specifically addresses the issue where a payee was concerned would not permit the conviction to rest upon the statutory inference. See *Kaufman v. State,* 199 Md. 35, 85 A.2d 446 (1952).

(1973); *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); *United States v. Romano*, 382 U.S. 136, 86 S.Ct. 279, 15 L.Ed.2d 210 (1965); *United States v. Gainey*, 380 U.S. 63, 85 S. Ct. 754, 13 L.Ed.2d 658 (1965); *Tot v. United States*, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943).

"The value of such a standardized inference is that it permits the fact-finder to rely upon precedent to find the relationship between the proved facts and the fact to be inferred rather than to rely solely on their collective experience. In evaluating the need for and propriety of a standardized inference we should weigh two distinct factors: (1) whether, in light of present day experience, the proven facts bear sufficient relationship to the fact to be inferred; and (2) whether the rational connection inherent in the inference is of such a nature that standardization is desirable." *Commonwealth v. Turner*, 456 Pa. 116, 120–121, 317 A.2d 298, 300 (1974). (Footnote omitted).

Without considering whether either or both of these inferences could pass constitutional muster,[17] it is ob-

17. "In assessing this first factor, we must at least apply a 'more-likely-than-not' standard. *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969). Cf. *Barnes v. United States*, 412 U.S. 837, 93 S.Ct. 2357, 37 L.Ed.2d 380 (1973). However, even though *Turner* and *Leary* did not expressly mandate a 'beyond a reasonable doubt' standard, it is unquestioned within this jurisdiction that circumstantial evidence, while acceptable, must meet the reasonable doubt standard. *United States v. Hamilton*, 457 F.2d 95 (3d Cir. 1972); *United States v. Blair*, 456 F.2d 514 (3d Cir. 1972); *Commonwealth v. Amato*, 449 Pa. 592, 297 A.2d 462 (1972); *Commonwealth v. Cimaszewski*, 447 Pa. 141, 288 A.2d 805 (1972); *Commonwealth v. Bartlett*, 446 Pa. 392, 288 A.2d 796 (1972). Therefore, in a criminal case where the fact to be inferred is the guilt of the crime charged or one of the elements of that crime, any standard less than reasonable doubt would be repugnant to the interpretation of the presumption of innocence as understood in this jurisdiction. See, *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959)." *Commonwealth v.*

vious that in the instance of a drawer or maker, the nexus to the inference to be inferred is infinitely stronger than when it is applied to a payee negotiator. While it may be valid to assume that a maker of a check would be aware of the status of his account at the time of the check's issuance, it is more difficult to find a basis for contending that a payee would necessarily possess this knowledge either at the time of the receipt of the instrument or at the time that it is tendered for payment.

The lower court attempted to justify the application of the inference to a payee because of the assumed difficulty in proving the intent of the payee negotiator. See also *Commonwealth v. McBray*, 86 Montg. Co.L.R. 238.[18] The difficulty pinpointed in this argument is the very reason that a legislature would in fact distinguish between the maker or drawer and the payee. The legitimacy of the presumption is not to be determined by the difficulty in proof but rather by the rational connection between the proven facts and those facts sought to be inferred. If the problem is as difficult as suggested by the court below, it would then be the responsibility of the legislature to promulgate new legislation.

However, since the legislature has expressly required knowledge and a state of mind, a conviction cannot be

*Turner, supra,* at 121, n. 3, 317 A.2d at 300. See also *Commonwealth v. DiFrancesco, supra.*

18. "The statute is intended to plug an obvious loophole that would exist if there was no criminal responsibility placed upon endorsers, exactly the same loophole through which defendant seeks to escape. There is less need for the statutory presumption created by the refusal to make good on the check as it relates to a maker, who presumably knows the status of his own bank account, than for an endorser, who in the absence of the presumption could always say he knew nothing of the account in question and thus escape responsibility. Without the statutory presumption, worthless checks could be passed with almost certain impunity by any endorser or anyone posing as an endorser where there is a fictitious maker. 86 Montg.Co.L.R. 238, 242 (1966)."

had unless these elements have been established beyond a reasonable doubt. *Commonwealth v. Bonomo*, 396 Pa. 222, 151 A.2d 441 (1959). It is obviously specious to argue as the learned court below suggested, that an essential element or elements may be ignored by the use of a procedural device.

We therefore find that it was the intention of the legislature to restrict the statutory scheme of proof to prosecutions of drawers or makers where there is an obvious reason to conclude that they possessed the requisite knowledge and intent. Since we have determined that the direct evidence was insufficient to prove two of the three elements of the crime and further, that the prosecution could not properly rely upon the statutory inference to withstand the demurrer, the judgment of sentence must be reversed and the appellant discharged.

It is so ordered.

EAGEN, O'BRIEN and ROBERTS, JJ., concur in the result.

POMEROY, J., dissents.