## Commonwealth v. White

*George E. Hoffer, Assistant District Attorney,* for Commonwealth.
*Angelo Skarlatos,* for defendant.

SHUGHART, *P.J.,* March 14, 1978 — On the morning of November 5, 1977, defendant, Thomas White, Jr., was arrested by Patrolman George Morrison of the Upper Allen Township Police, for driv-

ing under the influence of alcohol. A nonjury trial was held on March 2, 1978. From the testimony we find the following to be the relevant facts:

At 12:15 a.m. on the morning of November 5, 1977, Officer Morrison observed a Ford Mustang parked in the middle of the north bound lane of South York Street with its lights on and engine running. Upon closer examination, Morrison observed defendant asleep in the front seat with the car in "drive" and defendant's foot on the brake.[1] After some difficulty, the officer aroused defendant and got him to step outside of his car. After smelling alcohol on defendant's breath, the officer had him perform various physical tests to determine if he was under the influence of alcohol. Defendant seemed disoriented and could not perform the tests to the officer's satisfaction, whereupon he was placed under arrest, advised of his rights, and taken to the hospital for a blood test, which showed the defendant's blood alcohol level to be 0.12 percent.

The Act of June 17, 1976, P.L. 162, 75 Pa.C.S.A. §3731, defines the offense of driving under the influence of alcohol as follows: "[a] person shall not drive any vehicle while: (1) under the influence of alcohol to a degree which renders the person incapable of safe driving." This provision replaced section 1037 of the Act of April 19, 1959, P.L. 58, 75 P.S. §1037, which had made it unlawful to "operate" a motor vehicle while intoxicated. Thus we must first ascertain the intention of the legislature in changing the word "operate" in the prior law, to "drive" in the new statute.

---

1. Although defendant testified that the car was in park, in view of his hazy recollection of other matters and his admitted inebriated condition, we accept the testimony of the officer on this point.

There is no question that under the prior statute the facts found above would have rendered defendant guilty of the offense. On facts substantially the same as those in the case at bar, the court in Com. v. Kloch, 230 Pa. Superior Ct. 563, 327 A. 2d 375 (1974), affirmed a conviction for "operating" a motor vehicle while under the influence of alcohol, even though the vehicle was not in motion at the time of the offense. The court interpreted "operating" as being in actual physical control of the automobile and stated:

"A driver may be in 'actual physical control' of his car and therefore 'operating' it while it is parked or merely standing still 'so long as [the driver is] keeping the car in restraint or in position to regulate its movements. Preventing a car from moving is as much control and dominion as actually putting the car in motion on the highway.'" Id. at 576, 327 A. 2d at 383, citing State of Montana v. Ruona, 133 Mont. 243, 248, 321 P. 2d 615, 618 (1958).

The court in Com. v. Kloch, supra, recognized, however, that a distinction has been drawn between those statutes that define the offense in terms of "operate" and those that define it in terms of "drive," the latter imposing a requirement that the vehicle be in motion. See also Com. v. Kallus, 212 Pa. Superior Ct. 504, 507, 243 A. 2d 483, 485 (1968), where the court stated that whether a statute requires motion as an element of the offense often turns on the language of the Vehicle Code. Com. v. Price, 64 D. & C. 2d 694 (Montg. 1972), and Com. v. Cherrington, 50 D. & C. 2d 26 (Columbia 1970), further discuss the distinction that has been drawn by various state courts between the terms "operate" and "drive." Representative statutes have been collected in an annotation in 47

A.L.R. 2d 570 (1956), wherein it is stated: "In cases arising under statutes which prohibit the driving of a motor vehicle by a person who is intoxicated or who is under the influence of intoxicating liquor, the term 'driving' has been construed as requiring that the vehicle be in motion in order for the offense to be committed." Id. at 573. See Poling v. State of Indiana, 156 Ind. App. 145, 295 N.E. 2d 635 (1973), for a holding in accordance with the above stated principle.

In further ascertaining the legislative intent by the change from operate to drive we must consider the fundamental rule of statutory construction that:

"It is a canon of statutory construction that where words of a later statute differ from those of a previous one on the same subject, they presumably are intended to have a different construction." Com. v. Buzak, 197 Pa. Superior Ct. 514, 517, 179 A. 2d 248, 250 (1962). See also Com. v. Moon, 383 Pa. 18, 117 A. 2d 96 (1955).

Although there are as yet no decisions construing this wording in the new statute, we must presume that the legislature intended to effect a substantive change in the offense by changing the wording of the new statute to drive, thereby requiring that the charge be based on more than a defendant's physical control of the vehicle. It would be unreasonable to come to any other conclusion because the legislature is presumed to be familiar with statutory interpretations by the courts.

This does not, however, end our inquiry. In the case at bar, defendant's car was found in a lane of traffic with its lights on and engine running, and defendant asleep in the front seat. In addition, the

car was in "drive" with defendant's foot on the brake.

"The law in Pennsylvania has consistently recognized that circumstantial evidence may, without more, be the basis of a conviction so long as the inferences drawn therefrom prove the fact or facts in question beyond a reasonable doubt." Com. v. Treftz, 465 Pa. 614, 627, 351 A. 2d 265, 271 (1976).

In Com. v. Kloch, supra, defendant was found asleep behind the wheel of his car, which was parked mostly on the highway, with its lights on and engine running. In addressing the facts and the reasonable inferences that could be drawn therefrom, the court stated: *"From what they saw the troopers could reasonably infer* that appellant had driven to the spot where they found his car, stopped there without pulling completely off the highway, left the motor running to provide some warmth, left the lights on to provide some safety and then had fallen asleep." Id. at 579, 327 A. 2d at 384. (Emphasis supplied.)

Likewise, in the case at bar, the circumstances surrounding this incident clearly support an inference that defendant had *driven* to the spot in question and because of his intoxicated condition, had fallen asleep behind the wheel. Although the car was not in motion in the technical sense when Morrison arrived on the scene, *we may reasonably infer that defendant had been driving while intoxicated up to the point where he fell asleep.* This in itself is enough to constitute the offense of driving while under the influence of alcohol, even though Morrison did not actually see the car in motion. As Judge Hannum stated in Com. v. Kallus, supra: "There is no doubt, in the present case, that the engine was running and that the car was in gear

and thus the defendant was in actual physical control of the machinery of the vehicle. It was through no fault of his that the vehicle itself was not also in motion and had he succeeded in his efforts, the public safety, which the Act was intended to protect, could have been seriously jeopardized." Id. at 508, 243 A. 2d at 485.

This is not a case where an intoxicated defendant was asleep on the side of the road, with his engine running and lights lighted. Although we express no opinion on the result in such a case under the new statute, it does not seem unreasonable that the legislature, by changing the wording of the prior law, may intend to protect such a person from prosecution for the offense of driving under the influence where steps are taken consistent with public safety and the policy of the act. It would be unreasonable to conclude that the legislature meant the courts of this state to adhere to a technical requirement of motion observed by the officer, where there is a clear inference from which motion could be found. An opposite decision would vividly demonstrate an absurd result which we are proscribed from assuming: Com. v. Horton, 465 Pa. 213, 221, 348 A. 2d 728 (1975).[2] Such result would be inconsistent with the public safety or the policy of the act.

## ORDER

And now, March 14, 1978, for the reasons stated in the opinion filed this date, we find defendant guilty as charged.

2. The courts may not presume the General Assembly intends an absurd result: Act of November 25, 1970, P.L. 707, as amended, 1 Pa.C.S.A. §1922(1).