## Commonwealth v. Arent

*Howard C. Klebe,* for the Commonwealth.
*William R. Balph,* for defendant.

CAIAZZA, *J.*, November 14, 1985—Defendant has filed motions in arrest of judgment and for new trial following a jury verdict of guilty on all of the above-numbered charges.

Summarily, the case involves a series of commercial transactions between defendant, acting as the owner and general manager of Verterano Beer Distributing, and Jack Robert Kopen, who at all material times was the president of Kopen Beverage Company [hereinafter Kopen]. The transactions at issue here purportedly occurred in the latter three months of 1983. Specifically, it is the Commonwealth's position that defendant passed 15 checks to Kopen while defendant knew they would not be honored by the drawee; defendant's actions, if proven, would constitute a violation of the bad checks section of the Crimes Code.[1]

Defendant first challenges the sufficiency of the evidence. In this regard it is well settled that the court must consider the evidence in the light most

---

1. 18 Pa.C.S. §4105 (Purdon Supp. 1985).

favorable to the Commonwealth, and must afford the Commonwealth all reasonable inferences arising from the evidence. Commonwealth v. Griffith, 242 Pa. Super. 484, 486, 364 A.2d 374, 375 (1976); Commonwealth v. Conti, 236 Pa. Super. 488, 492, 345 A.2d 238, 240 (1975). Following this standard, the court finds that the evidence in this case is sufficient to sustain the verdict. Furthermore, the court holds that the verdict was not against the weight of the evidence, nor was it contrary to the evidence.

Defendant argues in support of his motion that a casual observation of the signature discloses that there are at least two different signators. Defendant bolsters this assertion by noting that the Commonwealth offered little evidence in regard to the allegation that defendant was the drawer of the checks. The evidence indicates that Kopen and defendant had engaged in business dealings for approximately three to four years prior to October of 1983, and that these dealings occurred almost every business day. Jack Kopen testified that his business received checks printed in the name of Verterano Distributing which were purportedly signed by defendant. Mr. Kopen further testified that he was familiar with the signature of defendant and that every check received from Verterano Distributing was signed in defendant's hand. Oscar Kopen, the chairman of the board of Kopen and Jack Kopen's father, also testified that he observed defendant's signature numerous times and stated that it was either neatly written or scribbled. Jack Kopen also testified that he had been present when defendant signed checks at defendant's place of business approximately three to five times over the three-year course of dealing. Further evidence revealed that Jack Kopen and defendant had a conversation wherein defendant indicated that the checks at issue would be hon-

ored in some manner. The jury also physically had the checks for their review during the course of their deliberations. Defendant offered no evidence on his own behalf.

A consideration of the evidence reviewed in this opinion cogently convinces the court that the Commonwealth has met its burden. Also, while the signatures appearing on all the checks were not identical, the sufficiency and the weight of the evidence is not reduced to a point meriting court intervention. It is solely a matter reserved for argument and jury interpretation.

Next, based upon a question asked by the jury, defendant opines that the court should infer that the Commonwealth did not sufficiently prove its case. The jury asked whether defendant was the only person authorized to sign the checks for defendant's company. The query itself does not necessarily mean that the jury harbored reasonable doubt; most likely it was asked for purposes of clarification. The court responded by again instructing the jury that it should consider the evidence presented during the course of the trial and that it should then make its own determination. Defendant's attempt to have the jury instructed again on the Commonwealth's burden of proof is unavailing.

The bulk of defendant's argument must still be considered. On demurrer, defendant argued a unique notice of dishonor theory which was rejected by this court. The gist of the argument concerns the inapplicability to this case of the presumption section in the bad-check statute. The relevant sections are as follows:

"(a) Offense defined. A person commits an offense if he issues or passes a check or similar sight order for the payment of money knowing that it will not be honored by the drawee.

"(b) Presumption. For the purposes of this section as well as in any prosecution for theft committed by means of a bad check, an issuer is presumed to know that the check or order . . . would not be paid, if:

. . .

"2. payment was refused by the drawee for lack of funds, upon presentation within 30 days after issue, and the issuer failed to make good within 10 days after receiving notice of that refusal." 18 Pa.C.S. §4105.

Jack Kopen testified that after he was notified that the 15 checks were dishonored, he in turn notified defendant of the dishonor, and was told by defendant that the checks would be honored. Jack Kopen could not identify the exact date of the conversation. Both Jack and Oscar Kopen also testified to an in-person conversation with defendant in December, following the dishonor of the checks, in which defendant said he would "take care of everything." Conceding that the exact date of the conversations was never determined, it is also a matter of record that defendant has not honored the checks. Since the payment has not been made the jury could have plausibly determined that notice had been given and that 10 days had elapsed from the time of that notice.[2]

The court is cognizant of the fact that the terms of a penal statute are to be strictly construed. Commonwealth v. Griffith, supra, at 488, 364 A.2d at 376 (1976). In Griffith, the only evidence of notice in regard to the alleged bad check in issue, was a

2. As stated in the November 15, 1984 memorandum opinion, the issue of whether the notice of the dishonor at the preliminary hearing is sufficient under the statute is not a necessary determination in light of the other evidence presented.

telephone conversation with defendant's wife. Id. at 487, 364 A.2d at 376. The statute requires that notice be given to the issuer; hence, there was insufficient evidence presented as to that check. Id. at 487-88, 364 A.2d at 376. The instant case is clearly distinguishable; here, the Commonwealth has adduced proof of personal notice to defendant.

The sparse case law that exists on the issue refutes defendant's position. In Commonwealth v. Martin, 74 Montg. Co. L.R. 156, 159 (1957), the court concluded that the requisite notice was given; however, assuming that actual notice was not technically made, the evidence of defendant's promises to pay was sufficient to constitute notice. Id. In Commonwealth v. Rosenweig, 93 Montg. Co. L.R. 98, 100-01 (1969), the court notes, in a similar fashion as argued by defendant here, that the criminal law in the Commonwealth does not define notice. The court referred to the Uniform Commercial Code (UCC), 12 A.P.S. 3-508, presently codified at 13 Pa.C.S. §3508, which is again relied upon by defendant in the case sub judice. However, the Rosenweig court referred to the definitional section of section 3508 for guidance; defendant limits his discussion to the time requirement of section 3508. The UCC construes "Manner of giving notice" as "Notice may be given in any reasonable manner. It may be oral or written and in any terms which identify the instrument and state that it has been dishonored." 13 Pa.C.S. §3508(c). This section led the Rosenweig court to conclude that the filing of the complaints and bills of indictment constituted notice given in "reasonable manner," further noting that the amount due on the checks remained unpaid at trial.

While this court is not bound by the UCC characterization of notice, the "reasonable manner" con-

struction of the term is persuasive. Certainly there is ample evidence of notice in this case, as defined in the UCC and as understood in everyday common-sense usage.

Defendant opines that the court should adopt the time requirement of section 3508 at the UCC, which states: "Any necessary notice [of dishonor] must be given by a bank before its midnight deadline and by any other person of before midnight of the third business day after dishonor or receipt of." 13 Pa.C.S. §3508(b). The court declines to apply this section. While the UCC can be helpful in the definition and construction of commercial terms that are used in penal statutes, the court does not believe that entire sections of the UCC should be transplanted into the Crimes Code. The purposes of the civil UCC provisions and the penal statutes are obviously not identical. To require that victims of the bad check statute meet the strict commercial time requisites of the UCC, is a construction that will not be adopted by this court, absent express legislative action. To do otherwise would be to substantively augment the provisions of 18 Pa.C.S. §4105.

Defendant's next argument concerns incomplete checks delivered to Kopen by defendant or his designated agent. The major case in this area is Commonwealth v. Ali, 438 Pa. 463, 265 A.2d 796 (1970), wherein the court determined that when defendant signed a check in blank, there must be evidence produced that he authorized the completion of the instrument. Id. at 467, 265 A.2d at 798. Testimony elicited here described a course of dealing wherein defendant or his agent would bring an order to be filled by Kopen. Kopen would then load the beer, giving to defendant or his agent an invoice based upon the amount of the order, less any credit for returned items. The exact amount of the order would

then be inserted by either Oscar Kopen or Jack Kopen or occasionally, defendant's agent. Defendant would be notified of the monetary amount of the check the same day as it was inserted via a returned sales slip. The evidence recited here is sufficient to constitute a course of dealing granting both Kopen and defendant's agent the authority to complete defendant's checks.

Defendant's argument concerning checks presented after December 2, 1983, the date of the internal revenue seizure of his account, was dealt with adequately at the demurrer stage. Defendant offers no evidence in that regard to rebut the presumption of section 4105(b), discussed supra. Further, no evidence suggests that the seizure of the account caused any of the "NSF" checks.

In sum, defendant's various "notice of dishonor" arguments fail, based upon the adequate evidence produced by the Commonwealth. No other grounds asserted by defendant are meritorious. The motions in arrest of judgment and for new trial are denied.

## ORDER OF COURT

Now, November 14, 1985, defendant's motions in arrest of judgment and for new trial are denied pursuant to the provisions of the appended opinion.