NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-210                                          Appeals Court

COMMONWEALTH  vs.  RACHELLE SCORDINO.

No. 22-P-210.

Middlesex.     December 9, 2022. – May 12, 2023.

Present:  Rubin, Massing, & D'Angelo, JJ.


Uttering Forged Instrument.  Negotiable Instruments, Forgery.
    Forgery.  Evidence, Intent.  Intent.  Practice, Criminal,
    Required finding.



    Complaint received and sworn to in the Natick Division of
the District Court Department on July 3, 2017.

    The case was heard by David W. Cunis, J.


    Laurie Yeshulas for the defendant.
    Daniel M. DeBlander, Assistant District Attorney, for the
Commonwealth.


    RUBIN, J.  In this case we address the proof necessary to

support a conviction for uttering a false check ("uttering") in

violation of G. L. c. 267, § 5, beyond a reasonable doubt.

Concluding that the Commonwealth failed to meet its burden, we

reverse.

Background.  The defendant was convicted of uttering after a jury-waived trial.  The facts adduced at trial, viewed in the light most favorable to the Commonwealth, see Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979), were as follows.  At about 4:30 P.M. on May 11, 2017, the defendant entered a branch of her own bank, Citizen's Bank, at the Stop & Shop supermarket on Worcester Street in Natick, and, presenting her own valid driver's license, cashed a check made payable to her in the amount of $950.  The check was drawn on the Citizen's Bank account of one Phyllis Adams.

The following month, Adams noticed several checks that she had not written were cashed against her account.  She kept two checkbooks for that account at her home in Natick.  She testified that no one had permission to sign checks from the account on her behalf.[1]  Apparently checks from both checkbooks were used without her authorization.

Adams did not sign the check the defendant cashed.  Adams did not know the defendant, nor had Adams ever seen her before.  And Adams had no reason to pay the defendant.

---

[1] Evidence at trial, however, did indicate that the account was a trust account and that checks from one of the checkbooks show the names of both Phyllis Adams and John Douglas Adams in the top lefthand corner of the checks where account owner names and addresses typically appear.  Nothing in our decision turns on this.

There was no evidence linking the defendant to Adams's home or to any other unauthorized use of Adams's checks. There was no evidence that the defendant was in possession of Adams's checkbook at any point in time, or that she had any access to it. In fact, the Commonwealth presented no evidence as to how the defendant obtained the check. And, despite the fact that several checks were missing, there was no evidence that the defendant attempted to cash or did cash any other checks. There was also no evidence that the check the defendant did cash was altered in any way. On the contrary, from all appearances, the check was written out to the defendant from Adams's account and bore a signature that at least arguably looked like that of Adams. There was no evidence that the defendant signed the check.

Nor was there any evidence of consciousness of guilt. The defendant's conduct at the bank was normal, offering little more than a typical bank transaction. There was no evidence that the defendant attempted to conceal her identity, alter her appearance, or assume the identity of another while cashing the check. She did not try to cash the check at a bank where she was not a customer. And, the defendant did not make any admissions that she knew the check was fraudulent.

The defendant appeals her conviction, arguing that the evidence was insufficient to support it, a claim properly preserved in the trial court.

Discussion.  To support a conviction for uttering a false check in violation of G. L. c. 267, § 5, the Commonwealth is required to prove, beyond a reasonable doubt, each of the following four elements:  (1) that the defendant offered as genuine; (2) an instrument; (3) she knew to be forged; (4) with the intent to defraud.  Commonwealth v. O'Connell, 438 Mass. 658, 664 n.9 (2003), quoting Commonwealth v. Levin, 11 Mass. App. Ct. 482, 496 (1981).  On these facts, we are presented with the following question:  Is evidence that a defendant in an otherwise unremarkable bank transaction who cashed a check from a person who did not know the defendant and did not owe the defendant money, alone, sufficient to support a finding beyond a reasonable doubt that the defendant knew the instrument was forged and acted with an intent to defraud?  We conclude it is not.

It is not a crime to accept payment or funds from one person with a check drawn on the account of another.  Recipients of such checks may not know, and may never have met, the individual on whose accounts such checks are drawn.  As an example of such a transaction, the defendant put forward the hypothetical of an attorney who is paid for services provided to

a client by a check drawn on the account of another person, such as a friend or family member of the client.  We have no doubt that such an arrangement, permitted when consistent with the requirements, including client consent, of Mass. R. Prof. C. 1.8 (f), as appearing in 471 Mass. 1349 (2015), is not out of the ordinary.  And if, in fact, such a check was presented but it was stolen, as the check was here, the account holder would be able to testify truthfully, as Adams testified here, not only that he or she did not know the payee, but that he or she did not owe the payee anything.

Nonetheless, consistent with the holdings of some courts in other jurisdictions that have addressed the issue, we do not think the recipients of such checks could be convicted for uttering merely upon proof beyond a reasonable doubt, without something more, that in the ordinary course they cashed a check drawn on a stranger's account made out to them in an otherwise unremarkable transaction at their own bank.  We do not think the recipient's conduct of cashing such a check would suffice to demonstrate either an intent to defraud, or knowledge of forgery, beyond a reasonable doubt.  The Commonwealth must show more.  See, e.g., United States v. Barnes, 579 F.2d 46, 47 (7th Cir. 1978) ("the mere passing of a counterfeit instrument, without more, is insufficient in itself to establish beyond a reasonable doubt that the defendant knew the instrument to be

counterfeit and thus passed it with intent to defraud"); Parks v. State, 746 S.W.2d 738, 740 (Tex. Crim. App. 1987) ("This Court has wisely held that intent or guilty knowledge cannot be inferred from the mere passing of a forged instrument. Albrecht v. State [486 S.W.2d 97, 102 (Tex. Crim. App. 1972)]. Indeed, to hold otherwise would create the danger that the unknowing and accidental passing of a forged instrument could effectively become a strict liability offense."). See also Commonwealth v. Horton, 465 Pa. 213, 218 (1975) ("we also find unacceptable the Commonwealth's intimation that the possession by a person in appellant's circumstances of a check purportedly issued by a defunct corporation supports the requisite guilty knowledge. Experience teaches that all too frequently it is the poorer and less trained citizen within our society who is victimized by bogus schemes in which non-existent or defunct corporations are used as ploys").

Of course, such recipients could put on a defense that described their legitimate receipt of any such check. But a defendant has no burden in a criminal prosecution, and the defendant is not required to disprove any element of a charged offense. The burden is always on the Commonwealth to prove each element beyond a reasonable doubt. See Horton, supra at 218. ("we reject the Commonwealth's suggestion that an inference of guilt can be drawn from Mrs. Horton's failure to explain her

possession of this check.  To rule otherwise would permit the prosecution to be relieved of its obligation to prove its case, unaided by the defendant").

For evidence to be sufficient to meet the burden of proof beyond a reasonable doubt it must be sufficiently probative to demonstrate the truth of the proposition with the requisite degree of certainty.  Given the not uncommon circumstances in which a person may be given a check drawn on a third party's account, we do not think the inference of intent to defraud or of knowledge of forgery from cashing such a check is sufficiently strong, that, standing alone, cashing such a check can support a finding beyond a reasonable doubt with respect to those elements of uttering.

Consequently, the defendant's conviction must be reversed.

Judgment reversed.

Finding set aside.

Judgment for the defendant.