363 A.2d 1187
**COMMONWEALTH of Pennsylvania,**
**Appellant,**
v.
**James Michael SHADE.**

Superior Court of Pennsylvania.
Submitted April 12, 1976.
Decided Sept. 27, 1976.

116

Ballard F. Smith, Jr., Asst. Dist. Atty., Meadville, for appellant.

Stephen Toole, Meadville, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge.

The Commonwealth contends that the court erred in dismissing an indictment charging appellant with statutory rape [1] and corruption of a minor [2] even though the

1. Act of 1972, Dec. 6, P.L. 1641, No. 344, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3122.
2. Act of 1972, Dec. 6, P.L. 1641, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3125.

complaint was filed beyond the period allowed by § 3105 of the Crimes Code.[3]

The unfortunate facts of the instant case are set out in the able opinion by President Judge Thomas of the Court of Common Pleas of Crawford County: "[The victim] is the stepdaughter of [appellee] and if her testimony is believed, she had sexual relations with her stepfather at a motel on March 12, 1974, at a time when she was fifteen years of age. After the night in question, she attended school only a half day, left school and went to a girl friend's house and related to girl friend and girl friend's mother what had happened. The family minister was called and [the victim] related the accusation to the minister. The minister called the Defendant's wife, (natural mother of [the victim]) and related in general terms [the victim's] accusations. [The mother] asked the minister to inquire of [the victim] if she had sexual relations with her husband. [The victim] answered in the affirmative and the minister conveyed this answer to [her mother]. [The victim] requested she be allowed to go to Lancaster, Pennsylvania, to live with an aunt and uncle and [the victim's mother] approved the request since she was 'having trouble with her anyway.' [The victim] was transported to Lancaster by the minister and sometime later related what happened to aunt and uncle. Uncle went to see an attorney but nothing further was done. About six to eight weeks after she arrived in Lancaster, [the victim] wrote a letter to her mother spelling out the details of what had happened and expressing a belief that the same fate might befall her younger sister . . . who still remained in the household. [The victim's mother] then called [the victim] and told her she was crazy and that she didn't believe her. Both mother and daughter admit that at the time the event happened 'they were not getting along.'

3. Act of 1972, Dec. 6, P.L. 1641, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 3105.

"We thus have the alleged sexual intercourse occurring on March 12, 1974; notice indirectly given to the mother on March 13, 1974; notice to the aunt and uncle acting as foster parents or guardians probably around late March or early April, 1974; written notice to the mother, confirmed by oral telephone call, in April or May of 1974, but no prosecution until charges were filed by the Pennsylvania State Police on August 4, 1975." [4]

The lower court concluded that the delay in reporting the offense to the authorities by the victim's mother was a bar to prosecution. It, therefore, quashed the indictment; and the Commonwealth brought this appeal.

Section 3105 of the Crimes Code provides that: "No prosecution may be instituted or maintained under this chapter [Chapter 31, Sexual Offenses] unless the alleged offense was brought to the notice of public authority within three months of its occurrence or, where the alleged victim was less than 16 years old or otherwise incompetent to make a complaint, within three months after a parent, guardian or other competent person specifically interested in the victim learns of the offense." [5]

It is clear from the record that the public authorities were not notified of the alleged offense until more than 15 months after the victim's mother was aware of the crime. The Commonwealth asks that we interpret § 3105 to create an exception for those cases in which the parent

4. In n. 1 of the lower court opinion, the circumstances surrounding the ultimate report of the crime to the authorities is explained: "Ironically, the incident came to the attention of the state police about February 23, 1975, when [the victim's mother] made an assault complaint against her husband and indicated there mght be some involvement between her husband and [another daughter]. In June of 1975, [the other daughter] related to the state police that [her sister] had related to her that she had sexual relations with her stepfather. After a July 7, 1975 interview with [the victim] by Lancaster State Police, charges were filed by the local state police on August 4, 1975."

5. Section 3105 has recently been amended to eliminate the requirement of prompt reporting. 18 Pa.C.S. § 3105, supra, as amended May 18, 1976, eff. in 30 days.

is unwilling to prosecute either because he disbelieves the child victim or because he is not sufficiently interested in the child's welfare to report the criminal offense against the child.

■■ As the court below correctly concluded, the drafters of § 3105 and of § 213.6(4) of the Model Penal Code, from which § 3105 was derived, did not envision the situation in which the minor victim makes a prompt outcry but the parents or other person specifically interested in the minor fail to act. Section 3105 embodies a legislative presumption that bona fide complaints of sexual misconduct will be made promptly and expresses the policy our courts should be shielded from stale or untimely complaints.[6] The legislature did not provide an exception for later detection by the authorities in those situations when a parent or other person specifically interested in the child is reluctant to report the crime. Because the legislative intent is clear from the plain meaning of the words of the statute, we have no alternative but to apply it according to its terms.

There is no question that the offense was not reported to the authorities within the period provided by § 3105. We must, therefore, affirm the order of the lower court quashing the indictment.

Order affirmed.

6. Jarvis, Pennsylvania Crimes Code and Criminal Law § 3105 (1974):
"This section was derived from § 213.6(5) [§ 213.6(4)] of the Model Penal Code. The three months' period was adopted with the idea that the possibility of pregnancy might change a participant in a sex act to a vindictive complainant. The commentary in Tentative Draft No. 4, at page 265, reads as follows:
"The possibility that pregnancy might change a willing participant in the sex act into a vindictive complainant, as well as the sound reasoning that one who has, in fact, been subjected to an act of violence, will not delay in bringing the offense to the attention of the authorities, are sufficient grounds for setting some time limit upon the right to complain. Likewise, the dangers of blackmail or psychopathy of the complainant make objective standards imperative."

SPAETH, J., files a concurring opinion, in which PRICE, J., joins, as well as in the majority opinion.

SPAETH, Judge (concurring):

I reluctantly, most reluctantly, concur that the order of the lower court must be affirmed.

I concur because the legislative apparently did not foresee the present situation. The commentaries [1] on and the legislative history [2] of Section 3105 [3] support the statement of the lower court that

> the drafters of Section 3105 and the scrivener of the Model Penal Code comments did not visualize the situation where the victimized minor made a prompt outcry but the "parents or other persons specially interested" does [sic] nothing. The drafters apparently visualized situations where a stranger to the immediate family circle was the culprit and the "typical irate parent" would have no hesitation in reporting the event to the proper prosecutorial authorities. No exceptions were made for incestuous situations where the prompt reporting would turn parent against parent, or the situation where parent or specially interested person, for a variety of real or imagined reasons, chooses not to believe the child, or where a parent believes the child but determines the trauma of the public trial would do more harm to the child than the good accomplished by convicting the defendant. (Emphasis deleted.) Slip opinion at 4.

I am reluctant because the result is unjust. A fourteen-year-old victim of an alleged statutory rape is barred from our criminal courts because of the indifference or

1. K. Jarvis, *Pennsylvania Crimes Code and Criminal Law,* § 3105 (1974); S. Toll, *Pennsylvania Crimes Code Annotated,* § 3105 (1974).

2. 1972 Legislative Journal—Senate 1616, 1633, 1647, 1696, 2022; 1972 Legislative Journal—House 4080.

3. Act of Dec. 6, 1972, P.L. 1641, No. 344, § 1, eff. June 6, 1973, 18 C.P.S.A. § 3105.

hesitancy of five adults to whom she made immediate out-cry. Furthermore, she is undoubtedly not the only child that has been so barred. Intra-familial sexual offenses against children are not uncommon.[4] Nor is it uncommon for adult family members to conceal such offenses. The reasons are many: a parent may not want to report her spouse to the police; she may be deterred by economic considerations from reporting the breadwinner of the family; she may fear retribution against her or her child; she may not care.

Surely the legislature did not intend that a child victimized by a person in a close relationship to her or a child of uncaring parents should be treated more harshly than a well-cared-for child victimized by a stranger. The legislature is presumed not to intend "a result that is absurd, impossible of execution or unreasonable." Act of Nov. 25, 1970, P.L. 707, No. 230, added Dec. 6, 1972, P.L. 1339,

---

4. The Philadelphia Assault Victim Study, a project supported by the National Institute of Mental Health, studied Philadelphia rape victims from April to October, 1973. In cases of sexual attacks on children under 12 years of age, it was found that

in only 22% of the cases was the offender a stranger. In 30% of the cases he was a casual acquaintance (by definition, someone who was known to the victim or known to be a friend or acquaintance of the victim's family, but having no active or direct relationship with the victim herself.) 29% a friend, 18% an extended family member (any male blood relative, other than father or brother,) and in 14% nuclear family members (by definition, natural father or brother or any male living in the household and taking on the role of surrogate father). J. Peters, M.D., L. Meyer, K. Flanagan, "Social and Psychiatric Data on Philadelphia Rape Victims (April-October 1973)", Supported by NIMH 21304, The Philadelphia Assault Victim Study, Philadelphia General Hospital, Unpublished paper, p. 8.

In cases of adolescents from thirteen to seventeen years of age, it was found that

[i]n 38.3% of the incidents against adolescents there was an attacker who was a total stranger to the victim. In 16.7% of the cases there was an attacker who was a relative stranger. In 23.1% of the incidents a casual acquaintance was involved, and in 26.4% the atacker was a friend. . . . In only 1.7% of the cases an extended family member was involved. A nuclear family member was the offender in 5% of the incidents (usually the father or stepfather.) Id., p. 21.

No. 290, § 3, imd. eff., 1 Pa.C.S.A. § 1922. Yet such an unreasonable distinction is inevitable if the statute is applied to this type of case.

Furthermore, the application of the three-month limitation to children at all seems unreasonable in light of the purposes of the statute as articulated in the comments of the Joint State Government Commission and the Model Penal Code drafters.[5] Those purposes are to reduce (1) the possibility that pregnancy might change a willing participant in the sex act into a vindictive complainant, (2) the dangers of blackmail, and (3) the dangers of a psychopathic complainant.

The first purpose is specifically negated in regard to children, as may be seen by the drafters' comment explaining the two three month limitation periods: within three months of the offense, for an adult, but for a child, within three months after a parent, guardian or other competent person learns of the offense. Thus they say:

> A specific possibility of extension of time is made in the case of young children and incompetents for the obvious reason that *if such individuals, under our rationale, do not possess the judgment and capacity necessary to become "willing" participants in an act of sexual intercourse,* their deficiency may also blind them to the need for complaint.

> Model Penal Code § 3105, Comment (Tent. Draft No. 4, 1955, at 265) (Emphasis supplied).

Since a child cannot be considered a "willing" participant under the first purpose, her pregnancy is irrelevant in regard to her complaint.

The fact that a child is not a "willing" participant also negates the second purpose, for blackmail ordinarily occurs when a "willing" participant decides to exploit the consensual sexual act for her own gain.

5. The comments are partially reprinted in S. Toll, *supra.*

The third and only remaining articulated purpose is the danger of the psychopathic complainant who has fabricated the offense. I fail to see how a three-month limitation period on the third-person adult reported in any way decreases the possibility that the child victim is psychopathic.[6]

Nevertheless I do not think this court can simply say that because a statute is unreasonable, we will not enforce it. Section 1922 of the Statutory Construction Act [7] —the presumption of reasonable legislative intent—has always been used to construe a statute so that it can be given effect in a rational manner. *Commonwealth v. Horton,* 465 Pa. 213, 348 A.2d 728 (1975); *Commonwealth v. Stoffan,* 228 Pa.Super. 127, 33 A.2d 318 (1974). I have found no case where it has been used to negate a statutory provision *in toto.*

The legislative preoccupation with vindictive and psychopathic complainants thus deprived one of the most helpless classes of people in society—children, especially unfortunate children—of their right to have their grievances remedied in court. I have grave doubts about the constitutionality of such a statute.[8] The issue of constitutionality, however, was not raised by the Commonwealth. This court is therefore precluded from deciding

6. The Model Penal Code comment to § 3105 also justifies the section by the "sound reasoning that one who has, in fact, been subjected to an act of violence will not delay in bringing the offense to the attention of the authorities." That reasoning is also inapplicable to cases involving children since the drafters have found that "their deficiency may also blind them to the need for complaint." In this case, moreover, the child complained promptly; it was the adults, who had not been subjected to violence, who did not complain.

7. Act of Nov. 25, 1970, P.L. 707, No. 230, added Dec. 6, 1972, P.L. 1339, No. 290, § 3, imd. eff., 1 Pa.C.S.A. § 1922.

8. Consider, *inter alia,* Article 1, § 11 of the Pennsylvania Constitution, which provides in pertinent part: "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

it *sua sponte*. *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975).

Fortunately for future victims of sexual crimes, the legislature has apparently recognized the problems caused by Section 3105 and has recently amended the section to eliminate the prompt reporting requirement entirely. The section now provides what was so under the common law:

> Prompt reporting to public authority is not required in a prosecution under this chapter: Provided, however, that nothing in this section shall be construed to prohibit a defendant from introducing evidence of the alleged victim's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence. 18 C.P.S.A. § 3105, *supra*, as amended May 18, 1976, eff. in 30 days.

Unfortunately for this fourteen-year-old girl, the amendment was not effective until June 17, 1976.

PRICE, J., joins in this opinion as well as in the majority opinion.