555 A.2d 1246

COMMONWEALTH of Pennsylvania, Appellant,

v.

Edward LANE, Appellee.

Supreme Court of Pennsylvania.

Argued April 14, 1988.

Decided March 13, 1989.*

* This decision was considered and rendered prior to March 7, 1989.

392

William H. Platt, Dist. Atty., Wallace B. Eldridge, III, for appellant.

Dennis Charles, Allentown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION

NIX, Chief Justice.[*]

Edward Lane was tried and convicted of rape, statutory rape, indecent assault, terroristic threats and corruption of a minor, arising from an incident with an eight-year-old girl. He was sentenced to four to ten years incarceration. On appeal, the Superior Court reversed the judgment of sentence and granted him a new trial, 365 Pa.Super. 644, 526 A.2d 813. The Commonwealth petitioned for allowance of appeal and we granted allocatur.

The alleged sexual assault in this case occurred on October 1, 1980. It is charged that the eight-year-old victim, Jennifer Simonson, was lured to the basement of her apartment building by appellee, a neighbor in the same building where Jennifer and her mother lived, on the pretext of helping appellee look for a lost cat. In that basement area, appellee is charged with having violently raped the minor victim. As a result of this encounter, Jennifer became aware that she was bleeding in the vaginal area and when it continued she reported that fact to her mother. At that time she did not mention the sexual assault as the cause of the bleeding. On the next day when Jennifer was examined by her doctor she told him that she did not know what had happened. Jennifer's mother suggested that the injury, described by the attending doctor as a one-quarter inch laceration of the perineum, may have occurred while the victim was bicycling. The doctor's progress note sheet, however, indicated that the injury's cause was "unknown." Other evidence adduced at trial revealed that Jennifer and her mother were very close, and that they both were acquainted with appellee who had lived with a friend of Jennifer's mother.

The primary issue is whether the Superior Court erred in reversing the trial court's granting of a Commonwealth challenge for cause with respect to a prospective juror. The pertinent facts regarding this issue are as follows.

[*] This case was reassigned to the writer.

During *voir dire* a prospective juror was questioned by counsel for appellee. His response revealed that he would have difficulty not considering the length of time between when the incident occurred and when it was reported to the police. (N.T. 7/12/82 at 7A)

Counsel and the prospective juror were then called to the bench, and the following discussion took place:

[Defense Counsel]

Q: It is my recollection of what you said, that you indicated that you may very well be affected by the length of time between the alleged offense and the date when it was reported, is that correct?

A: That's correct, that part, yes.

[Defense Counsel]

Q: I thought you also indicated that you felt that you would be able to listen to the evidence and decide the case based on evidence.

A: Just based on the evidence, right; but still, like I say, the evidence I can go 100% with the evidence, if [sic] just the point that there was such an elapsed time that we should really—that would really be the point that I felt would just not make a—

[Defense Counsel]

Q: Let me ask you this—

A: That may still have some of the doubt in my mind.

[Defense Counsel]

Q: About what, sir?

A: ... the facts were all reported to me, and to the jurors, then you know, that would be it. Then, I would go strictly on them facts; it's just the point that to me it seems impossible that they should wait so long when they have a child at that age.

[Defense Counsel]

Q: Are you saying that you would listen to the evidence?

A: I would listen to the evidence, right.

BY MRS. ROACH FOR THE COMMONWEALTH.

Q: ... when you first answered this line of questioning, is it not true that you said you didn't think you could be a fair juror?

A: Yes ... but just like I say, it's—it seems almost impossible that somebody would wait that long to, you know, to me it's—but, like I say, I would weigh the facts.

[Commonwealth Attorney]

Q: That is along with all of the other facts?

A: All of them together, that would have to be concluded in my mind right there to be honest, that could be one of the facts.

THE COURT: Do you feel you could be a fair juror?

A: I feel I could be fair, but I am still saying after that, all the facts that will be presented the fact that was brought out here at this time would still be in my mind, and I would still try to be as fair as possible.

(N.T. 7/12/82 at 8A, 9A, 10A).

Subsequent to this sidebar exchange, the trial judge granted the Commonwealth's challenge for cause and this prospective juror was dismissed. This dismissal was held to be in error by the Superior Court. In an unpublished memorandum opinion the Court stated its reason for this conclusion as follows:

[W]e believe the court erred when it granted the Commonwealth's challenge for cause: 1) because the court dismissed a juror who expressed a legitimate question as to a potential weakness in the Commonwealth's case; 2) because the court's action may have had a prejudicial effect on the jury members that sat in appellant's case.

For the reasons that follow we agree with both of these conclusions and affirm the Order entered by that court.[1]

The test for the disqualification of a prospective juror for cause is well established in this Commonwealth. From the *voir dire* examination, the prospective juror's

1. The appeal to the Superior Court was heard before Judges Cavanaugh, McEwen and Montemuro. The Commonwealth subsequently filed an Application for Reargument and Reconsideration which was denied by the full Court.

ability and willingness to eliminate the influence of his scruples and render a verdict according to the evidence must be determined. This judgment must be based upon the juror's answers and demeanor. *Commonwealth v. Bighum,* 452 Pa. 554, 560, 307 A.2d 255 (1973); *Commonwealth ex rel. Fletcher v. Cavell,* 395 Pa. 134, 140, 149 A.2d 434 (1959); *Commonwealth v. Gelfi,* 282 Pa. 434, 437–438, 128 A. 77 (1925). The underlying question is whether the prospective juror had formed a *fixed opinion* or was willing to be guided by the evidence. *Commonwealth v. Sparrow,* 471 Pa. 490, 500–501, 370 A.2d 712 (1977). For example, a juror may be properly excluded where he or she has some relationship to the attorneys trying the case. *See Commonwealth v. Johnson,* 484 Pa. 545, 400 A.2d 583 (1979). A venireman may also be stricken where he or she indicates a willingness to believe a policeman simply because he is a policeman, or to disbelieve a prison inmate simply because he is an inmate, *see Commonwealth v. Futch,* 469 Pa. 422, 366 A.2d 246 (1976). This is a decision that rests in the sound discretion of the trial judge and that decision "will not be reversed in the absence of palpable error." *Commonwealth v. Bighum, supra; Commonwealth v. Sparrow, supra.* The latter principle—that the decision rest within the sound discretion of the trial court—was never intended to be a euphemism for a ruling that is insulated from appellate review. The record must justify the action taken by the trial court.

■ The validity of our system of justice is dependent upon the integrity of our fact-finding process. The hallmark of that system is trial by jury. To achieve this goal, we are committed to provide a jury of one's peers and require that they be willing to decide the cause on the evidence presented following the instructions as to the law as provided by the court. Although our tradition has established the concept of peremptory challenges to be used by the parties, such an exercise of power by a judicial officer is foreign to our system of jurisprudence. The challenge for cause is vested in the judiciary to assure that persons

unable to fill the role of a venire person will not participate. It is not the role of the court to attempt to use this prerogative based upon its belief that a particular venire person would be more or less persuaded by a particular aspect of the case. A review of this record only reflects that this prospective juror might well place great weight upon the belated accusations against the accused than another serving in that capacity. The record also indicates that the same venire person indicated he would assess that fact with all the other evidence presented.

■■■■ It is hornbook evidentiary law that a witness may be impeached by showing that, on a prior occasion, he or she engaged in conduct inconsistent with testimony given at trial. *See* 3A Wigmore, *Evidence* § 1042 (Chadbourne rev. 1970). *See also Commonwealth v. Turner,* 499 Pa. 579, 583, 454 A.2d 537 (1982). A corollary to this rule is that

> [i]f a witness had been under a duty to speak on a prior occasion, or *if it would have been natural for the witness to have spoken on such an occasion,* but the witness remained silent, the witness may be impeached by showing that the present testimony included a fact as to which he had been silent on a prior occasion.
>
> Torcia, *Wharton's Criminal Evidence* § 436 (14th ed. 1986) (emphasis added).

Moreover, it is well established in this Commonwealth that the lack of a prompt complaint is a factor to be considered by a juror in cases involving sexual offenses. 18 Pa.C.S. § 3105 (amended 1976); *see also Commonwealth v. Green,* 487 Pa. 322, 409 A.2d 371 (1979). Unquestionably, a prompt complaint is a factor which must be assessed with all of the other pertinent evidence bearing upon the question of the credibility of the complaining witness. *See, e.g., Commonwealth v. Krick,* 164 Pa.Super. 516, 67 A.2d 746 (1949). In such cases the question of the sincerity of the complaint is raised if it is established that the delay under all of the factors present was either unreasonable or unexplained. See, *e.g., Commonwealth v. Bradford,* 202 Pa.Super. 468, 198 A.2d 412 (1964); *Commonwealth v. Freeman,* 295

Pa.Super. 467, 441 A.2d 1327 (1982). *See generally,* Comment, 44 U.Pitt.L.Rev. 955, 968–73 (1983). Therefore, the inference of insincerity is only justified where the facts of the case fail to disclose a reasonable explanation for the challenged time lapse prior to the complaint.

■ The lack of a prompt complaint by a victim of a crime, although not dispositive of the merits of the case, may justifiably produce a doubt as to whether the offense indeed occurred, or whether it was a recent fabrication by the complaining witness. The untimely complaint might be made in order to protect the truly guilty party, as in the case of a child blaming an innocent third party for the wrongdoing of a parent. It might be an act of revenge against the accused prompted by dislike or by an unrelated dispute between either the minor complainant and the accused or, possibly, between the family of the minor complainant and the accused. It is also possible that the immaturity of the victim would cause the child not to appreciate the offensiveness of the encounter and the need for its prompt disclosure. See, *e.g., Bradford, supra.* Whatever the scenario, the victim's motive in making a complaint following a considerable period of silence is relevant as affecting the witness' veracity.

■ Moreover, it is important to note that evidence of a prompt complaint should also be considered when the victim is a child. A number of Superior Court cases have language which would suggest a failure to make a prompt complaint should have little or no application in sexual assaults involving minor complainants. *See, e.g., Commonwealth v. Nabried,* 264 Pa.Super. 419, 399 A.2d 1121 (1979); *Commonwealth v. Shade,* 242 Pa.Super. 115, 363 A.2d 1187 (1976); *Commonwealth v. Allabaugh,* 162 Pa.Super. 490, 58 A.2d 184 (1948). Such a statement of law is misleading and is to be avoided. The real question in matters concerning youthful complainants is whether the immaturity of the child occasioned the delay as opposed to a design to deceive. In determining whether or not the delay reflects the insincerity of the complainant, the maturity is merely an addition-

al factor to be considered by the jury in deciding the question.

█ Aware that this was an issue to be considered during trial,[2] the trial judge nevertheless struck Mr. Mellen from the jury panel for indicating his willingness to consider this evidence. The trial judge concluded that

> On the basis of Mellen's answers, reservations, vacillating and general demeanor in responding to questions put to him on *voir dire*, he had a fixed opinion as to the defendant's culpability because of the victim's delay in reporting what occurred and was thereby unable to render a verdict based solely on the evidence presented at trial.

> *Commonwealth v. Lane,* slip op. at 9, No. 239 of 1982 (Lehigh County Court of Common Pleas, September 15, 1982).

Although the competency of a particular juror is to be judged by the lower court in its sound discretion, where that discretion is abused an appellate court must find trial error. Here the only questions and answers involving Mr. Mellen which were offered as a basis for his exclusion from the panel concerned his reservations regarding the complainant's credibility due to the extreme delay in reporting the incident. There is no other basis offered to support the sustaining of the challenge for cause. Mr. Mellen, had he been given the opportunity to sit in this case, may very well have ultimately concluded that the delayed complaint was satisfactorily explained.

The interchange which formed the basis for this ruling occurred during *voir dire*. Defense counsel advised Mr. Mellen of the delay in the reporting of the incident by the complaining witness. The obvious purpose was to assess the impact of that fact upon the thinking of the prospective

---

**2.** In the trial of this case the Commonwealth recognized that the issue of the failure to make a prompt report was an appropriate issue in the case and addressed it during the presentation of its case-in-chief by offering an explanation for that delay.

juror.[3] Mr. Mellen's obvious concern was elicited without that prospective juror having the benefit of the Commonwealth's explanation of the reasons for the delayed complaint. Mr. Mellen's comment that "...it's just the point that to me it seems impossible that they should wait so long when they have a child at that age ..." (R.8A) does not reflect an unyielding bias, but rather an intuitive recognition of an *"unexplained delay."* Based upon the information supplied to Mr. Mellen at the time, his expressed concern was appropriate.

To support its position, the Commonwealth stresses the importance of the trial judge's perception of that individual in reacting and responding to the questioning. While deference must be given to the trial judge's observation of the witness and his assessment of that witness' candor in the responses, support for the court's conclusion must nonetheless be apparent on the record. Where the prospective juror asserts his ability to listen to all of the evidence fairly, and the trial judge determines from his observation that that witness, whether intentionally or unconsciously, would be incapable of rendering an unbiased judgment, the judge must set forth those observations that would justify such a conclusion. In this instance, the trial court attempted to satisfy this responsibility by characterizing Mr. Mellen's testimony as "vacillating." From the record we cannot concur in that assessment. The record demonstrates that at all times Mr. Mellen asserted that he could consider all of the evidence and merely insisted that from the facts, as stated to him, he would find the delay a significant fact. The vacillation referred to by the trial court did not reflect a

3. It is not a favored practice for the trial court to permit counsel to isolate portions of the expected testimony, out of context, to attempt to ascertain its possible impact upon the thinking of a prospective juror. *Commonwealth v. Werts,* 483 Pa. 222, 395 A.2d 1316 (1978). *Voir dire* is designed to assist in the selection of individuals who are unbiased and capable of objectively reviewing the evidence in accordance with the instructions of the trial court. *Commonwealth v. Johnson,* 452 Pa. 130, 305 A.2d 5 (1973). It is not designed to permit counsel to attempt to predict jurors' possible responses to isolated segments of the evidence. The evil in practices of this character is demonstrated in this instance.

hidden reservation, but merely a candid effort to express that the delay in reporting without adequate explanation would weigh heavily in his judgment. Since, as stated, this was a legitimate factor to be considered in the trial of the case, there was no basis for concluding that Mr. Mellen was unqualified to serve as a juror.

■ Having concluded that the trial court was in error in sustaining the challenge for cause, it must be determined whether the error was harmless. The Commonwealth claims that the discharge of Mr. Mellen did not constitute prejudice to the defendant. This is merely another way of stating that, if the ruling was error, the error would have been harmless. We are also constrained to disagree with this contention. As we have previously noted, it is foreign to our concept of justice to permit the trial judge, who serves in the role of the impartial arbiter, to intrude into the jury selection process in such a manner as would favor one side to the contest. Such a departure from our jurisprudence could never be condoned and therefore could never be treated as harmless. In effect, the trial judge in this case peremptorily excluded a juror. That is the function of the advocate, not the jurist.

Furthermore, in reviewing the record of *voir dire*, one cannot conclude that the activity surrounding Mr. Mellen's excusal for cause, which occurred before the jury, did not impact upon their impression of their role as jurors. Initially, Mr. Mellen was seated with them during the *voir dire* where he was questioned about the effect the fact of the year long delay would have on his ability to judge the case. He responded that it would be considered by him in his judgment of the facts. He was then called to sidebar, an act witnessed by the remainder of the panel, and, after a discussion with the judge and attorneys, he left. This factor was intended by the defense to be one of the, if not the most, salient arguments in support of their position. After the panel witnessed the dismissal of Mr. Mellen, the jury could reasonably have concluded that the delay in reporting should be given little, if any, significance in its

ultimate determination. This error was compounded by the fact that defense counsel's request for a curative instruction to prevent such an impression from being left with the remaining jurors was denied. Thus the judge, although his attention had been drawn to the possible implications that may have arisen from Mr. Mellen's excusal, deliberately chose to take no further action.

Accordingly, the order of the Superior Court is affirmed, the judgment of sentence is vacated and a new trial is ordered.

McDERMOTT, J., files a dissenting opinion, in which LARSEN and PAPADAKOS, JJ., join.

McDERMOTT, Justice, dissenting.

A decision to disqualify a prospective juror is within the discretion of the trial court and will not be reversed in the absence of a palpable abuse of that discretion. *Commonwealth v. Colson*, 507 Pa. 440, 490 A.2d 811 (1985) *cert. denied*, 476 U.S. 1140, 106 S.Ct. 2245, 90 L.Ed.2d 692 (1986); *Commonwealth v. Black*, 474 Pa. 47, 376 A.2d 627 (1977). In considering a challenge for cause this Court has held that the challenge should be granted when the prospective juror demonstrates a likelihood of prejudice by his or her conduct and answers to questions. *Commonwealth v. Ingber*, 516 Pa. 2, 531 A.2d 1101 (1987); *Commonwealth v. Colson, supra.*

In this case the trial judge carefully observed the juror, and was not confident of that juror's ability to be impartial, and he summarized his reasons, in the following remarks:

> [O]n the basis of [the juror's] answers, reservations, vacillating and general demeanor in responding to the questions put to him on voir dire, he had a fixed opinion as to the defendant's culpability because of the victim's delay in reporting what occurred and was thereby unable to render a verdict based solely upon the evidence presented at trial notwithstanding defense counsel's attempts to rehabilitate him during questioning. The granting of the Commonwealth's challenge for cause was

not an abuse of discretion and the defendant suffered no prejudice thereby.

Opinion of the Court *En Banc*, at 8–9 (entered August 9, 1983). These reasons are certainly valid, and this writer is at a loss to understand how the Superior Court could presume to overrule the trial judge's decision when that decision was as much dependent upon the juror's non-verbal conduct, i.e., his demeanor, as it was on his verbal responses.

Seventy-five years ago, Mr. Justice Brown, writing for this Court made the following pertinent observations:

> The challenge of a juror for cause is addressed to the trial judge, and much weight must be given to his judgment in passing upon it. In exercising his discretion as to the fitness of a juror to serve, he has the juror before him, and much latitude must be left to him; and the weight to be given to the answers of a juror when examined on his voir dire is not to be determined exclusively by his words as we read them in the printed record. They are first to be weighed by the trial judge who sees and hears the juror, and, in the exercise of a wide discretion, may conclude that he is not competent to enter the jury box for the purpose of rendering an impartial verdict, notwithstanding his words to the contrary.

*Commonwealth v. Sushinskie*, 242 Pa. 406, 413, 89 A. 564, 565 (1913); *see also, Commonwealth v. Johnson*, 484 Pa. 545, 551, 400 A.2d 583, 585–86 (1979) (Opinion in Support of Affirmance). These observations are still valid.

The record in this case demonstrates that the trial judge fully examined the challenged juror and based his decision on what he heard and *what he saw*. There is no indication that the procedure utilized by the judge was flawed or unfair. Absent some such evidence, or independent evidence of judicial bias, an appellate court is not free to overrule the trial judge merely because on the same record it may have reached a different result.

Trial judges are not mere evidentiary technicians required to believe all the words they hear. It is the common

experience of life, to say nothing of the atmosphere of a courtroom, to know that there is more to an answer than words. A trial judge is the eyes and ears of an appellate court, charged with the awesome responsibility of measuring credibility. He is enjoined, as are jurors, to use all of his common and unique experience to hear not only what is said but how, by whom, and for what reason the evidence is offered. He hears and sees what we do not, reads credibility from every aspect of the witness in which words alone are rarely sufficient. His task is among the most difficult of all judicial functions, and when honestly done, the only certainty we have. Without good reason, reasons beyond printed words, we must defer to what he finds and credit his experience or try all cases ourselves.

We note that the Superior Court did attempt to support its decision to reverse by declaring that the method of the exclusion may have had a "chilling effect" on the ability of the other jurors to consider the delay in reporting the crime as a factor in evaluating the victim's credibility. However, the possibility of an adverse effect on the other members of the jury was never raised in post-trial motions and was, therefore, not properly before the Superior Court. *See Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979). Even had the issue been preserved, the record does not provide any support for the conclusion that the other jurors were tainted by the trial judge's actions. *See generally, Commonwealth v. Bachert*, 499 Pa. 398, 453 A.2d 931 (1982) *cert. denied*, 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983).

In conclusion, a reading of the record of the challenged voir dire in this case, discloses nothing therein which would indicate that the trial judge abused his discretion. If there is any "chilling effect" to be found here, it will be upon the exercise of honest discretion by trial judges who only doing their sworn best, cannot know what mood we may be in. I vigorously dissent.

LARSEN and PAPADAKOS, JJ., join in this dissenting opinion.