J-S21021-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA

Appellee

v.

ARIE OREN

Appellant

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 1940 EDA 2014

Appeal from the PCRA Order July 9, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0002955-2011

BEFORE:  BOWES, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED JULY 30, 2015**

Arie Oren, a physician, was charged with touching the vaginas of five patients without their consent while treating them for weight loss.  A jury found Oren guilty of four counts of aggravated indecent assault[1] and five counts of indecent assault,[2] and the trial court sentenced him to an aggregate term of 4½-9 years' imprisonment.  Oren did not file a direct appeal, electing instead to file a timely petition under the Post Conviction Relief Act ("PCRA")[3] alleging ineffective assistance of trial counsel.  Following

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 3125.

[2] 18 Pa.C.S. § 3126.

[3] 42 Pa.C.S. § 9541 *et seq*.

1

an evidentiary hearing, the PCRA court denied Oren's petition. Oren filed a timely appeal, and both Oren and the PCRA court complied with Pa.R.A.P. 1925. Because none of Oren's arguments warrant relief, we affirm.

The following evidence was adduced at trial. Oren ran a medical weight loss clinic in Conshohocken, Pennsylvania. On September 1, 2010, P.M. reported to police that during an appointment that day, Oren applied a massage machine to her genital area and vaginally penetrated her with his fingers.[4] She called a friend afterward who encouraged her to call the police.[5] Police opened an investigation but did not interview or arrest Oren.

On November 10, 2010, K.C. told police that Oren digitally penetrated her and pressed her hand against his crotch.[6] A few weeks later, T.H. complained to police that Oren rested his hand on her pubic area, had her press her hand against his crotch, massaged her genital area with the machine, and penetrated her with his finger.[7] Both K.C. and T.H. called the police on the same day they visited Oren's office.[8]

---

[4] N.T., 9/11/12, at 103-05.

[5] *Id.* at 105, 109-11.

[6] *Id.* at 57-59.

[7] *Id.* at 242-45, 254-55.

[8] *Id.* at 90, 254-55.

The fourth and fifth victims, B.R. and J.A., never came forward to police with their complaints; instead, police contacted them during their investigation.[9] B.R. testified that Oren applied the massager to her vaginal area over her underwear.[10] B.R. had four more appointments with Oren after the visit in which he applied the massager to her vaginal area.[11] J.A. testified that in August 2009, Oren put his hand up her dress and touched the top of her legs close to her genitals and then in October 2009 he digitally penetrated her while his penis was exposed.[12] J.A. had appointments with Oren every two weeks between the first incident in August 2009 and the second incident in October 2009.[13]

During his opening statement, his cross-examination of the victims, and his closing argument, trial counsel contended that the victims failed to make prompt complaints[14] and emphasized that B.R. and J.A. continued to attend appointments after their respective incidents.[15] Trial counsel did not,

_____

[9] *Id.* at 222-23; N.T., 9/12/12, at 49-50.

[10] N.T., 9/11/12, at 210-17.

[11] *Id.* at 221.

[12] N.T., 9/12/12, at 31-45.

[13] *Id.* at 56-57.

[14] N.T., 9/11/12, at 51; N.T., 9/13/12, at 14-15, 19, 22, 25.

[15] N.T., 9/13/12, at 21-22, 24-25.

however, request a jury instruction concerning the victims' failure to make prompt complaints.

During trial, P.M. and T.H. admitted making inaccurate statements in civil actions that they filed against Oren before his criminal trial. P.M. admitted that contrary to her civil complaint, she was not "wrestling" with Oren during her encounter and did not suffer physical harm.[16] T.H. admitted that contrary to her civil complaint, Oren did not kiss her vaginal area.[17] During closing argument, trial counsel asked the jury to reject T.H.'s and P.M.'s testimony on the basis of these inconsistencies.[18]

There was no physical evidence corroborating any of the victim's allegations.

As stated above, Oren did not file a direct appeal after his sentence, but six months after sentencing, through new counsel, he filed a PCRA petition contending that trial counsel provided ineffective assistance by failing to: (1) call character witnesses on his behalf, (2) request a jury instruction concerning the victims' failure to make prompt complaints about Oren's assaults, or (3) request a jury instruction concerning P.M.'s and T.H.'s

---

[16] N.T. 9/11/12, at 157-65.

[17] N.T., 9/12/12, at 9-14.

[18] N.T., 9/13/12, at 20, 23.

- 4 -

prior inconsistent statements in their civil complaints.[19]  In support of the character witness argument, Oren submitted affidavits of nine individuals, including his daughter, stating that Oren enjoyed an excellent reputation in the community for peacefulness.

On February 26, 2014, the PCRA court convened an evidentiary hearing on Oren's petition.  The Commonwealth introduced the testimony of both defense attorneys.[20]  Three character witnesses testified on Oren's behalf, and Oren himself testified.  On July 1, 2014, the PCRA court entered an order dismissing Oren's petition.  The PCRA court explained in its Pa.R.A.P. 1925 opinion that trial counsel provided reasonable bases for electing not to present character testimony or request jury instructions relating to prompt complaints or prior inconsistent statements.

Oren presents three issues in this appeal:

> Did the PCRA court err in denying relief on the claim that trial counsel was ineffective for failing to present good character evidence by (1) failing to consider that trial counsel had an independent duty to investigate such evidence and shifting this duty from counsel to appellant and (2) finding lack of prejudice from evidence that by itself can warrant an acquittal?

---

[19] Although Oren raised three additional claims of ineffective assistance in his PCRA petition, he does not pursue them in this appeal.  Therefore, we will not discuss these issues.

[20] Because we do not see any practical difference between the actions of these attorneys, we will refer to them in the singular ("trial counsel").

Did the PCRA court err in characterizing as 'reasonable' trial counsel's strategy that he did not request an instruction regarding the failures of two complainants to make a prompt complaint because he did not want to highlight that some of the complainants did promptly complain, where the applicable instruction would not have done what counsel purportedly feared and counsel had highlighted the failures to promptly complain throughout the trial?

Did the PCRA court err in manufacturing reasons for trial counsel's failure to request an instruction on how the jury should consider the evidence of the prior inconsistent statements of the complainants where counsel himself did not offer such reasons?

Brief For Appellant, at 3.

In PCRA appeals, our scope of review "is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party." **Commonwealth v. Sam**, 952 A.2d 565, 573 (Pa.2008) (internal quotation omitted). Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. **Commonwealth v. Pitts**, 981 A.2d 875, 878 (Pa.2009). We defer to the PCRA court's factual findings and credibility determinations supported by the record, but we review its legal conclusions *de novo.* **Commonwealth v. Henkel**, 90 A.3d 16, 20 (Pa.Super.2014) (*en banc*).

Oren alleges ineffective assistance of trial counsel in each of his arguments. "It is well-established that counsel is presumed effective, and [a PCRA petitioner] bears the burden of proving ineffectiveness."

- 6 -

*Commonwealth v. Ligons*, 971 A.2d 1125, 1137 (Pa.2009). To prevail on an ineffectiveness claim, the PCRA petitioner must plead and prove by a preponderance of the evidence that the underlying legal claim has arguable merit; counsel had no reasonable basis for acting or failing to act; and the petitioner suffered resulting prejudice. *Commonwealth v. Baumhammers*, 92 A.3d 708, 719 (Pa.2014). With regard to "reasonable basis," we will conclude that counsel's chosen strategy lacked a reasonable basis only if the petitioner proves that "an alternative not chosen offered a potential for success substantially greater than the course actually pursued." *Commonwealth v. Davido*, 106 A.3d 611, 621 (Pa.2014). The petitioner must prove all three factors or his claim fails. *Baumhammers*, 92 A.3d at 719.

We first discuss Oren's claim that trial counsel was ineffective for failing to present character witnesses on his behalf. When claiming ineffectiveness for the failure to call a potential witness, the petitioner satisfies the arguable merit and prejudice requirements of the ineffectiveness test by establishing that: (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial. *Commonwealth v. Johnson,* 966 A.2d 523, 536 (Pa.2009). In addition,

the petitioner must prove that the failure to call a witness was unreasonable, for the decision not to call a witness "usually involves matters of trial strategy." *Commonwealth v. Auker*, 681 A.2d 1305, 1319 (Pa.1996).

During the PCRA hearing, PCRA counsel asked trial counsel whether he considered "putting on character witnesses for the relevant trait of peacefulness and nonviolence."[21] Trial counsel answered:

> We had a number of discussions with Dr. Oren. First of all, he offered no character witnesses, none. He couldn't come up with any. We talked about it. It was a concern of mine that any opening the door to the jury hearing evidence that there was a prior conviction for a Racketeer Influenced Corrupt Organization offense was — I felt that that would have been strategically disastrous, so that's why we didn't spend a lot of time trying to come up with character evidence, plus he never offered anyone. I remember having specific discussions, could you get anyone and he couldn't, before we even took it to the next step of do we want to use this testimony.
>
> We contacted — in terms of his conduct and the actions in his practice, we contacted quite a number of other patients of his and some of them had some very troubling and unkind things to say about Dr. Oren and reported conduct which was very consistent with the conduct that was the subject of this trial. My concern was that they were going to start stepping forward so we couldn't find any of his former patients to come forward and say anything that would have helped us at all in our defense.[22]

_____

[21]N.T., 2/26/14, at 30.
[22] *Id*. at 30-31.

PCRA counsel stated: "I wasn't asking about former patients as character witnesses. I was talking about character witnesses."[23] Trial counsel responded: "I understand. Well, where do I go for character witnesses? He offered none."[24]

Moments later, PCRA counsel asked: "[D]id you ask [Oren] for the names of potential character witnesses from his family or his friends?"[25] Trial counsel answered: "I did."[26] PCRA counsel continued: "And it's your testimony that he was unable to provide you with any names?"[27] Trial counsel answered: "I don't recall him coming up with any names, sir."[28]

Oren testified:

> [Trial counsel asked] 'do I have people who can talk about me,' and I said, 'Of course, there is plenty of them; there are a lot of them. I could say all my family, relatives.' We were talking about even people coming from Israel to talk about me. Everybody wants to talk about me. I had patients who wanted to talk to me and I have colleagues who were willing

---

[23] *Id*. at 31.

[24] *Id*.; *see also id.* at 61 ("he didn't offer any").

[25] *Id.* at 33.

[26] *Id*.

[27] *Id*.

[28] *Id*.

> to talk to me and I have friends talk to me and I said
> they would all be ready to talk.[29]

Crediting trial counsel's testimony and rejecting Oren's testimony, the PCRA court concluded that trial counsel neither knew of, nor should have known of, the existence of any character witnesses.

The PCRA court's decision to credit trial counsel's testimony and reject Oren's testimony is a credibility determination to which we must defer. **Henkel**, 90 A.3d at 20. Accordingly, we accept as true that Oren failed to furnish names of any potential character witnesses; trial counsel attempted without success to find character witnesses at Oren's weight loss clinic; multiple patients voiced negative opinions about Oren to trial counsel; some patients even reported conduct to trial counsel that was consistent with the criminal conduct alleged in his criminal informations; and trial counsel became concerned that these patients might contact police and strengthen the Commonwealth's case against Oren. Based on these facts, we agree with the PCRA court's conclusion that trial counsel neither knew nor should have known of any potential character witness, the third element of **Johnson's** five-part test.

Oren insists that even if he failed to provide names of potential character witnesses, trial counsel had the duty to undertake his own

---

[29] **Id**. at 90.

"independent investigation" to find character witnesses willing to testify on Oren's behalf. Brief For Appellant, p. 18. Trial counsel's failure to conduct an independent inquiry was unreasonable, Oren asserts, because "it is ridiculous to think that a medical doctor living in Penn Valley with a social circle involving fellow synagogue members and tennis club patrons could not produce a few names of character witnesses." Oren's Supplemental Brief In Support Of PCRA Petition, p. 5.

The record demonstrates that trial counsel *did* conduct an independent investigation for character witnesses. Trial counsel asked Oren for names of potential witnesses, but Oren provided none. Trial counsel also contacted many of Oren's patients, who either gave negative reviews about Oren or reported conduct consistent with the accusations of the five complainants. Under these circumstances, it was reasonable for trial counsel to conclude that further searching for character witnesses not only was pointless but could actually damage Oren's defense by provoking more individuals to contact the police and augment the number of charges and complainants against him. Put differently, additional investigation for character witnesses did not "offer[] a potential for success substantially greater than the course actually pursued." **Davido**, 106 A.3d at 621.

In sum, the trial court properly rejected Oren's claim that trial counsel was ineffective for failing to locate character witnesses, because counsel neither knew nor should have known about available character witnesses,

and because he reasonably decided not to expand the investigation for character witnesses.

In his second argument, Oren contends that trial counsel was ineffective for failing to request a jury instruction concerning the victims' failure to make prompt complaints to the police. The following facts are relevant. Trial counsel noted in his opening statement that two of the victims failed to make a prompt complaint.[30] While cross-examining the victims, counsel highlighted that (1) K.C. did not call police until several hours after the alleged incident;[31] (2) P.M. did not call the police when she left Oren's office;[32] (3) B.R. had no intention of calling the police;[33] (4) T.H. did not call the police after leaving Oren's office but went to work;[34] and (5) J.A. never called the police or told anyone what allegedly happened to her.[35] During closing argument, trial counsel repeatedly emphasized that K.C., T.H., B.R. and J.A. failed to make prompt complaints and thus lacked

---

[30] N.T., 9/11/12, p. 51.

[31] *Id.* at 97.

[32] *Id.* at 154.

[33] *Id.* at 228.

[34] N.T., 9/12/12, at 8.

[35] *Id.* at 53, 58.

credibility.[36] Despite these attacks, trial counsel did not request that the trial court instruct the jury on the victims' failure to make prompt complaints. The trial court did not give this instruction, and trial counsel did not object to its omission.

During the PCRA hearing, trial counsel explained his strategy as follows:

> I believe that I tried to focus on — there were five complainants and they had to be approached differently, again, because some had made prompt complaints and others had not. Some had filed civil actions and others had not. So what I tried to do, I thought, was on each one find some manner in which I could question their credibility … Of course, the problem was to show any other motive, but for them reporting as happening, what, in fact, had happened. It was difficult to show a motive. We couldn't connect the five of them together in any way other than the fact that they were all patients of Dr. Oren.[37]

When asked why he did not request a jury instruction concerning the importance of prompt complaints, trial counsel testified:

> Having looked at that charge, I can say that I think that it was a double-edged sword in that it would highlight the fact that two of — the charge itself has language in it that adds credence to prompt complaint and two of them made what were, I felt, very prompt complaints. One of them went directly from the office to the police department and the

---

[36] N.T., 9/13/12, pp. 14-15, 18-19, 22, 25.

[37] N.T., 2/26/14, at 8.

> other gal got on a train — I think she lived in Philadelphia — and called on her cellphone as soon as she got off the train.[38]

PCRA counsel asked trial counsel why he argued the prompt complaint issue to the jury but failed to ask for a prompt complaint instruction. Trial counsel answered:

> [M]y making an argument to the jury is not the same as a jury charge. And to hear it read in the way I have reviewed it in the suggested standard criminal jury instructions highlights the fact that prompt complaint is to be considered by the jury as, in essence, supporting the substance of the complaint made by the complainant.[39]

The statute governing the subject of prompt complaints, 18 Pa.C.S. § 3105, provides:

> Prompt reporting to public authority is not required in a prosecution under this chapter: Provided, however, that nothing in this section shall be construed to prohibit a defendant from introducing evidence of the complainant's failure to promptly report the crime if such evidence would be admissible pursuant to the rules of evidence.

Our Supreme Court has observed:

> It is well established in this Commonwealth that the lack of a prompt complaint is a factor to be considered by a juror in cases involving sexual offenses. Unquestionably, a prompt complaint is a factor which must be assessed with all of the other pertinent evidence bearing upon the question of the

_____

[38] *Id*. at 9.

[39] *Id*. at 17.

- 14 -

credibility of the complaining witness. *In such cases the question of the sincerity of the complaint is raised if it is established that the delay under all of the factors present was either unreasonable or unexplained. Therefore, the inference of insincerity is only justified where the facts of the case fail to disclose a reasonable explanation for the challenged time lapse prior to the complaint.*

The lack of a prompt complaint by a victim of a crime, although not dispositive of the merits of the case, may justifiably produce a doubt as to whether the offense indeed occurred, or whether it was a recent fabrication by the complaining witness. … Whatever the scenario, the victim's motive in making a complaint following a considerable period of silence is relevant as affecting the witness' veracity.

***Commonwealth v. Lane***, 555 A.2d 1246, 1250-51 (Pa.1989) (citations omitted) (emphasis added).

We agree with the PCRA court that trial counsel had a reasonable basis for his actions. During opening and closing arguments, and during cross-examination, trial counsel could choose his own language in which to convey the failure-to-make-prompt-complaint theme to the jury. On the other hand, trial counsel could not control the language that the court used in its jury instructions – and he had good reasons to believe that the language of a prompt complaint instruction might do more harm than good for his client. A prompt complaint instruction might have bolstered the credibility of the three victims (P.M., K.C. and T.H.) who actually made prompt complaints to

the police. As trial counsel testified, "the charge itself has language in it that adds credence to [victims who make] prompt complaint[s]."[40] Moreover, a prompt complaint instruction might even have bolstered the credibility of the two victims (B.R. and J.A.) who delayed in reporting Oren's conduct. A prompt complaint instruction does not compel the jury to conclude a late-complaining witness lacks credibility; it merely directs the jury to assess whether the victim had a reasonable motive for delaying her complaint. *Lane*, 555 A.2d at 1250-51. Here, both B.R. and J.A. had reasonable motives for delaying their complaints. B.R. was not very troubled by Oren's conduct: "Well, it takes a lot to offend me ... It wasn't a huge concern to me."[41] J.A. was dealing with illnesses in her family and was afraid that her husband would physically assault Oren: "I didn't want ... to see my husband end up in jail."[42] Thus, trial counsel reasonably concluded that the prompt complaint instruction's focus on the victim's motive would influence the jury to find B.R. and J.A. credible.

Oren's thesis boils down to two points: (1) a prompt complaint jury instruction is equivalent to cross-examination or argument attacking the victim's delay in reporting a sexual assault; ergo, (2) it was unreasonable for

---

[40] N.T., 2/26/14, at 9.

[41] N.T., 9/11/12, at 222.

[42] N.T., 9/12/12, at 48.

trial counsel to cross-examine the victims and make argument about the absence of prompt complaint yet fail to ask for a prompt complaint instruction. For the foregoing reasons, however, trial counsel reasonably concluded that a prompt complaint instruction could hurt Oren's defense in ways that cross-examination or argument concerning the victims' promptness could not. Oren is not entitled to relief on this claim of ineffective assistance.

In his third and final argument, Oren asserts that trial counsel was ineffective for failing to request a jury instruction concerning P.M.'s and T.H.'s prior inconsistent statements in their civil complaints against Oren.

For two reasons, the absence of a jury instruction with the explicit term "prior inconsistent statement" did not cause Oren any prejudice. First, the instructions actually given by the trial court were an adequate substitute for a prior inconsistent statement instruction. The court instructed that "where there is a conflict in the testimony, the jury has the duty of deciding which testimony to believe," and that "if you cannot reconcile conflict[s] in the testimony, it is up to you to decide which testimony, if any, to believe and which to reject as untrue or inaccurate."[43] The court also instructed that credibility "may be the most important question with which you will be

---

[43] N.T., 9/13/12, at 64, 65.

concerned during the course of your deliberations," and that in the course of determining credibility, "you will likewise consider the interest which the witness has in the outcome of the litigation, if any, and whether or not that has tended, either consciously or subconsciously, to color the testimony of the witness."[44]  Construed together, these instructions conveyed that P.M.'s and T.H.'s civil suits against Oren might affect the credibility of their testimony in Oren's criminal trial; that the jury should weigh any inconsistencies between these witnesses' trial testimony and their civil complaints; and that it should decide which version to believe and which to reject as untrue or inaccurate.  While a prior inconsistent statement instruction might have conveyed these concepts more cogently, we consider these instructions to be a satisfactory alternative.

Second, the inclusion of a prior inconsistent statement instruction would not have changed the outcome of trial.  The PCRA court thoroughly explained in its opinion that the inconsistencies that trial counsel highlighted during cross-examination and closing argument were "relatively minor",[45] so a prior inconsistent statement instruction would not have changed the verdict.  The PCRA court reasoned:

---

[44]*Id*. at 61, 62.

[45] Pa.R.A.P. 1925 Opinion, at 16.

Trial counsel cross-examined the woman as to the statement in her civil complaint that she 'wrestled to sit up and extricate herself but was unable to do so' and asserted that the statement was not consistent, asking the witness if at any point in her testimony or her statement to the police she had said she was 'wrestling to get up.' The witness answered, 'No, not wrestling. He was holding my legs, trying to get them open, but I wasn't wrestling.' (She had testified under the prosecutor's direct examination, 'I was – I kept again, clinching up. You know, it felt like he was trying to put it [the electric massager] between my legs and I was keeping my legs very tight.' And, 'he continued with the massager. He was trying to — you know, I felt like he was trying to put it between my legs. And I was just keeping my legs shut tight.') Of the term 'wrestling,' trial counsel then asked the witness, 'So that word is incorrect that you use in your civil complaint?' and she replied, 'Yes. I suppose it is.'

Defense counsel also cross-examined the witness about 'physical harm' or 'injury.' He brought out that the police had asked her if she 'suffer[ed] any injuries due to this inappropriate touching and she agreed she had answered no. He got her to affirm she had suffered no physical injuries. He then read from the civil complaint the allegation that 'as a direct and proximate cause of defendant Oren's acts and admissions [sic], the plaintiff has suffered and will continue to suffer physical and emotional harm and loss of self esteem.' The witness said, 'Emotional, yes. Self esteem, yes.' Counsel persisted, 'But there are three things I read in that sentence. One of them is physical harm. So which is it? An hour after this event, you told the police you had no physical injuries … And the complaints file[d] a month later in which you seek money damages, you say that you suffered physical harm. Which one is it? The witness responded, 'It was not physical harm.' Counsel then asked, 'So that's wrong? - Paragraph 50 is wrong?' … The witness said, 'Yes. I mean, that's — but that's the — I don't know. That's

what the lawyers drafted up. I didn't — I mean, that's not the statement I gave to the police.'

Thus, under defense counsel's cross-examination, the witness conceded at the criminal trial that Dr. Oren's insertion of his fingers into her vagina did not 'physically injure' her and that the allegation to that effect in the civil complaint drafted by her lawyers was inaccurate. But this 'inconsistency,' upon which PCRA counsel seizes to label trial counsel ineffective for not requesting the Court to instruct the jury on its significance, turns, in the eyes of the law, on a highly technical distinction between 'physical harm' sufficient to warrant damages in a civil suit and 'physical injury' as a typical juror, or a lay witness, might understand it as meaning lasting or visible damage to a part of one's body, cf. Crimes Code, 18 Pa.C.S. § 2301 (defining 'bodily injury' for purposes of the article of the Crimes Code pertaining to offenses involving danger to the person as '[i]mpairment of physical condition or substantial pain'), which no one asserted Dr. Oren's sexual assault on the woman created. In fact, however, Dr. Oren's main offense against the woman, 'aggravated indecent assault,' 18 Pa.C.S. § 3125, appears, along with other physically assaultive offenses, in Part II, Article B of the Crimes Code, entitled 'Offenses Involving Danger to the Person,' in Chapter 31, 'Sexual Offenses.' Section 3125 provides that, '[A] person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good[-]faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if: (1) the person does so without the complainants consent …' 18 Pa.C.S. § 3125(a)(1). The common understanding of anyone, whether in the civil or criminal context, and the intention of the Crimes Code as well, is that inserting one's fingers into a woman's vagina without her consent is a 'physical assault,' the extent of any resulting 'physical injury'— aside from the expected emotional and psychological trauma that medical science teaches is hard to separate from the physical—

- 20 -

notwithstanding. The woman's testimony understood in this common-sense fashion was not inconsistent with the pleading of 'physical injury' made in her civil complaint, expressed in the words of her civil lawyer and signed by her with no legal training in the legal meaning of the term. For Defendant's trial counsel to have insisted on a jury instruction from the Court on 'prior inconsistent statements' would only have emphasized/highlighted how nothing said in the civil complaint drafted by her lawyer in the civil case was more than minimally inconsistent with her trial testimony …

A 'prior inconsistent statement' of the second woman upon which PCRA counsel built his argument of trial counsel's ineffectiveness also was arguably not that inconsistent with her trial testimony, and was equally or even more damaging, if believed. Trial counsel cross-examined the woman as to her statement in her civil complaint that, 'Also, without the consent of the plaintiff, the defendant put his head down to her vaginal area and on two occasions kissed the plaintiff.' Trial counsel successfully got the witness to admit that this statement was not 'consistent' with her statements to the police and at trial … [and] procur[ed] the witness's admission that Dr. Oren had not put his head down to her vaginal area.  However, in the context of the entire trial, the 'inconsistency' counsel was able to manufacture through skillful cross-examination was not terribly dramatic. The witness admitted under trial counsel's cross-examination that she had not read the civil complaint as well as she should have. The day before trial counsel's cross-examination, however, the witness had testified on direct examination that a couple of seconds before inserting his fingers into her vagina, while she was lying on the exam table, Dr. Oren kissed the back of her neck. On redirect examination after trial counsel's cross-examination, the prosecutor got the witness to read from her statement to police in which she had said that after using the massager on her private region, Dr. Oren bent down and kissed her neck. The prosecutor also elicited the witness's testimony that she did not write

the civil complaint and had not studied law or how to write legal documents.

The gist of this inconsistency in the witness's testimony with her 'prior inconsistent statements' thus boiled down to the admitted inaccuracy of the statement in the civil complaint that Dr. Oren had bent his head down to her vaginal area. In addition, Defendant's PCRA petition stresses the inconsistency, brought out by trial counsel's cross-examination of the witness, between the statement in her civil complaint that she reported the assault to the police immediately upon leaving the doctor's office and her trial testimony, in which she indicated that she first attended her previously scheduled shift at work, because it was too late to call out, then, after consulting with her sister by phone from work, reported the assault to police immediately after leaving the workplace.

Counsel argued to the jury that the witness's statements were inconsistent, and cross-examined her effectively to make it appear so. But for trial counsel to have insisted that the Court, in a neutral fashion divorced from argumentative conclusions, deliver Pennsylvania Suggested Standard Jury Instruction 4.08A on 'prior inconsistent statements' would have directed the jury to focus squarely on questions like, Was there really an inconsistency of any magnitude?, and, How significant is the inconsistency, in the greater context of all the evidence, in judging the witness's credibility as to the facts she was consistent about all along, including all those necessary to make out the essential elements of the crime? …

Trial counsel's asking for, and the Court's delivering, a jury instruction on prior inconsistent statements so the jury could ponder first whether the women had made prior inconsistent statements of any moment and second the importance of any such inconsistency in assessing their credibility would have had no reasonably likely positive impact on the jury's determination whether Dr. Oren had committed

> aggravated indecent assault on the women. Counsel did not render constitutionally deficient representation in not asking for a jury instruction on prior inconsistent statements.[46]

We commend the PCRA court's excellent analysis and conclude that it acted within its discretion by declining relief on this issue.

We conclude that the trial court properly denied PCRA relief on all issues that Oren has raised in this appeal.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/30/2015

---

[46] Pa.R.A.P. 1925 Opinion, at 17-19, 20-22, 23 (citations omitted).