J-S06010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
LAMONT J. HILL :
:
Appellant : No. 4022 EDA 2017

Appeal from the Judgment of Sentence October 23, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002600-2014,
CP-51-CR-0015196-2013

BEFORE: BOWES, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    **FILED MARCH 27, 2019**

Lamont Hill appeals from the judgment of sentence of thirty to ninety years of incarceration imposed by the trial court following his convictions of rape, unlawful contact with a minor, corruption of minors, and indecent assault involving two minor females. We affirm.

The pertinent facts are as follows. T.B. and A.B. were nieces of Appellant by marriage. In their early years, T.B. and A.B., who were cousins, lived in the same home with their mothers and siblings; their grandmother; and their maternal aunt and Appellant, who was her husband, and their children. T.B. stated that, when she was approximately five or seven years old, Appellant began touching and fondling her inappropriately. By the time she was ten or twelve, T.B. and her mother had moved to another home nearby; Appellant and his family also had moved to another house. The

families continued to meet at grandmother's home, or visit each other's homes.

When T.B. was between the ages of ten and twelve, Appellant began making sexually inappropriate comments to her when other people were not around. T.B. did not tell anyone in her family about this because A.B., her older cousin, had previously reported to her family Appellant's similar conduct with her and she was not believed.

When T.B. was fifteen years old, she was staying overnight at Appellant's house. While she was downstairs alone, Appellant raped her. Afterwards, Appellant made references to the incident, and reminded her multiple times that if she ever reported him to police, her aunt would likely lose her children.

When T.B. was a senior in high school, she chose the topic of sexual assault for a school project, prompting school administrators to question her about it. T.B. told them that she had previously been raped. It was also revealed that she had confided in multiple friends, as well as a teacher and school counselor. T.B. provided a statement to the Special Victims Unit of the police department.

Thereafter, A.B. alleged similar conduct on the part of Appellant. She stated that, as a child, she lived in her grandmother's house, moved out for a short time, but eventually moved back in with grandmother and Appellant and his family. After Appellant moved out, she frequently spent time at the house

Appellant shared with her aunt. According to A.B., Appellant touched her and T.B. inappropriately when A.B. was nine years old. She did not tell anyone about it at the time because she thought that nobody would believe her. In 2007, when she was fifteen years old, Appellant raped her while she was alone on the first floor of his home and her aunt and other children were upstairs. A.B. told her mother and grandmother what had occurred, but neither took any action. Although Appellant never raped her again, A.B. testified that he continued to say suggestive things and make sexually inappropriate gestures to her until she made a statement to the Special Victims Unit after T.B. came forward.

Investigation revealed that, in addition to T.B. and A.B., Appellant inappropriately groped and touched another niece, C.B.G., under similar circumstances. Although C.B.G. did not tell her mother about Appellant's conduct, and was reluctant to tell police about it, she ultimately gave a statement to police. She overheard T.B. tell her aunt, Appellant's wife, that Appellant was a "rapist" and a "pervert."

Appellant was charged at two criminal numbers with, *inter alia*, rape, unlawful contact with a minor, corruption of minors, indecent assault, and related offenses involving T.B. and A.B., and the cases were consolidated for trial. Prior to trial, the Commonwealth moved pursuant to Pennsylvania Rule of Evidence 404(b), to introduce C.B.G.'s testimony to demonstrate that Appellant's inappropriate touching of his minor nieces was part of a common

plan or scheme. Following a hearing, the court entered an order on September 23, 2016, that the evidence was admissible to prove common plan and to rebut defense claims of fabrication. C.B.G. testified at trial.

On April 3, 2017, the jury convicted Appellant of two counts each of rape, unlawful contact with a minor, and corruption of minors, and one count each of indecent assault person less than thirteen years of age and indecent assault person less than sixteen years of age. He was sentenced on October 23, 2017, to two consecutive terms of imprisonment of fifteen to forty-five years, for an aggregate sentence of thirty to ninety years imprisonment.

Appellant filed a timely post-sentence motion, which the trial court denied. Appellant filed a timely notice of appeal, complied with the trial court's Pa.R.A.P. 1925(b) order, and the trial court issued its Rule 1925(a) opinion. Appellant presents the following issues on appeal:

I. Did the trial court err and/or abuse its discretion when it granted the Commonwealth's request to present the testimony of C.B.[G.] pursuant to Pa.R.E. 404(b) where

●the evidence was unduly prejudicial to [Appellant] and this prejudice outweighed--substantially--any probative value of the testimony relating to incidents occurring between [Appellant] and C.B.[G.] as multiple other victims were able to independently testify in a consolidated jury trial about the allegations against [Appellant] with respect to the crimes actually charged;

●admission of the testimony of C.B.[G.] regarding additional, uncharged, encounters with [Appellant] resulted in unfair prejudice to [Appellant] insofar as this evidence has a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially;

●evidence that [Appellant] allegedly committed sexual crimes against a thirteen-year-old is the type of evidence that is so inflammatory by its very nature that it would tend to suggest decision on an improper basis and/or would tend to divert the jury's attention away from its duty of weighing the evidence impartially?

II. Is the verdict of guilty with respect to all charges against the weight of the evidence and so contrary to the evidence that it shocks one's sense of justice insofar as[:]

● there is no physical or forensic evidence corroborating any of the crimes alleged by the complainants;

● the complainants delayed inordinately in coming forward with the information regarding these alleged crimes;

● the complainants did not alert other witnesses who were present in the home at the time that these alleged crimes were occurring or about to occur despite the fact that the complainants knew these witnesses and these witnesses were relatives of the complainants who could have easily prevented or stopped the alleged crimes?

III.    Is the sentence imposed unduly harsh and excessive?

Appellant's brief at 8-10.

Appellant contends first that the trial court erred in admitting C.B.G.'s testimony pursuant to Pa.R.E. 404(b)(2).[1]  He argues that his alleged sexual

---

[1] Pa.R.E. 404(b) - Crimes, Wrongs or Other Acts, provides in pertinent part:

(1)    Prohibited Uses.  Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2)    Permitted Uses.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of

conduct with C.B.G. lacked the similarities and unique features to be admissible as evidence of a common scheme under that rule. Furthermore, he maintains that such evidence of other crimes, wrongs, or bad acts was inadmissible under Pa.R.E. 401(b)(1) to prove the character of a person in order to show that he acted in conformity therewith.

Our scope and standard of review of evidentiary issues is well-settled. "Questions of the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *Commonwealth v. Kendricks*, 30 A.3d 499, 503 (Pa.Super. 2011).

Pa.R.E. 404(b)(2) provides that evidence of past crimes, wrongs or other bad acts is inadmissible to show that a person acted in conformity therewith. However, such evidence is admissible if offered for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa.Super. 2015) (citing Pa.R.E. 404(b)(2)). However, in a criminal case, the probative value of such evidence must outweigh its potential for unfair prejudice in order to be

---

mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1) and (2).

admissible. *Id*. Thus, the trial court must conduct a balancing test to make that determination. **Commonwealth v. Hairston,** 84 A.3d 657, 664 (Pa. 2014).

The Commonwealth filed a pretrial motion seeking to admit C.B.G.'s testimony as evidence of a common scheme, plan, or design, and to rebut Appellant's claim of fabrication. The court held a hearing on the motion. The Commonwealth proffered evidence that there was a pattern of sexual abuse perpetrated by Appellant with his three minor nieces from 2000 to 2010, when they were between the ages of five and fifteen. It began with fondling and groping, and it took place in Appellant's home when no one else was present. Although the conduct involving C.B.G. did not culminate in a rape, the court found that the acts did not have to be identical.[2] The court found sufficient factual similarities to constitute a common plan. Moreover, it was appropriate to introduce this evidence to rebut defense claims of fabrication. The evidence was ruled admissible under Pa.R.E. 404(b).

_____

[2] C.B.G. was not raped by Appellant. The Commonwealth suggested that T.B. reported the abuse before Appellant progressed to raping C.B.G., and cited **Commonwealth v. Aikens**, 990 A.2d 1181, 1186 (Pa.Super. 2010), for the proposition that a common scheme is not defeated by the fact that another victim escaped escalating abuse. A statement Appellant made to her when she was fourteen or fifteen years old perhaps offers some insight as to why not. C.B.G. was standing at the sink washing dishes when Appellant came up behind her but did not touch her. He remarked, "I need to stop. Let me stop before you start accusing me like your sister." N.T. Jury Trial, 3/30/17, at 71-72.

Appellant contends, however, that the court erred in admitting this evidence concerning C.B.G. as a common plan because it did not establish a "signature." He cites **Commonwealth v. Semenza,** 127 A.3d 1, 7 (Pa.Super. 2015), in support of his position that the evidence had to be so similar as to amount to a "signature" in order to be admissible. Appellant claims further that the Commonwealth did not need to present evidence under the "common plan" exception in order to prove Appellant had raped T.B. and A.B.

The Commonwealth cites **Commonwealth v. O'Brien**, 836 A.2d 966, 969 (Pa.Super. 2003), for the proposition that prior bad acts evidence involving C.B.G. was sufficiently similar to establish a common scheme, plan or design. Furthermore, when balanced against the danger of unfair prejudice, the Commonwealth contends that the evidence was relevant to refute Appellant's claim that T.B. and A.B. fabricated their stories.

In **O'Brien**, the defendant challenged the accuracy of the victim's testimony of sexual abuse since five years had elapsed between the assault and the victim's report to his therapist. This Court held that evidence that defendant had previously been convicted of abusing two other boys in a similar manner was admissible to show a common scheme, plan or design, and therefore bolster the victim's credibility against the defense's attacks. **Id**.

On the record before us, we find no abuse of discretion in admitting C.B.G.'s testimony. In order to admit prior bad acts evidence as proof of a common scheme, the criminal conduct must be distinctive and similar, but it

need not be a "signature." ***Commonwealth v. Tyson***, 119 A.3d 353, 358 (Pa.Super. 2015) (*en banc*). We held therein that, in making the determination whether the prior bad acts evidence is sufficiently similar, "habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator" are relevant. ***Id***. at 359. There need only be "shared similarities" in the nature of the crimes. ***O'Brien***, ***supra*** at 971.

The trial court found that there were sufficient similarities to establish a common scheme or plan. All three girls were nieces of Appellant. The sexual abuse occurred between 2000 and 2010, while the girls were between the ages of five and fifteen. The abuse occurred in Appellant's home when no one was in the room, but when family members were in other parts of the house. He touched and fondled their breasts and buttocks, and would come up behind them and press his genitals against them. Although C.B.G. was not raped by Appellant, there were sufficient similarities in Appellant's conduct with his nieces to constitute a common plan.

Furthermore, since Appellant maintained that A.B. and T.B. fabricated their stories, the evidence was relevant to refute such claims. Additionally, any potential for unfair prejudice was alleviated by the trial court's limiting instruction to the jury that C.B.G.'s testimony was not offered to demonstrate that Appellant had a bad character or a propensity to commit bad acts, but rather, to show that Appellant's alleged abuse of C.B.G. was part of a common

scheme or plan, and was offered to refute claims that A.B. and T.B. had fabricated their stories. *See Commonwealth v. Hutchinson*, 811 A.2d 556 (Pa. 2002) (providing that when evidence is admitted for this purpose, the party against whom it is offered is entitled, upon request, to a limiting instruction). Thus, we find no abuse of discretion in the trial court's finding that the evidence was more probative than prejudicial.

Appellant claims next that his convictions are against the weight of the evidence. Our standard of review of a weight of the evidence claim is well established:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citing *Commonwealth v. Widmer*, 744 A.2d at 1053 (Pa. 2000)).

To determine whether a trial court's decision constituted a palpable abuse of discretion, an appellate court must

> examine the record and assess the weight of the evidence; **not however, as the trial judge, to determine whether the preponderance of the evidence opposes the verdict, but rather to determine whether the court below in so finding plainly exceeded the limits of judicial discretion and invaded the exclusive domain of the jury.**

- 10 -

*Id*. at 1056 (emphasis in original). Where the record adequately supports the decision of the trial court, the trial court has acted within the limits of its judicial discretion.

Appellant argues that the verdict shocks one's conscience because there is no forensic evidence or witnesses linking him to the crimes. Appellant further contends that, because the allegations of T.B. and A.B. were unsubstantiated and not reported for years, their mere allegations cannot overcome the lack of evidence that these crimes occurred. In support of his position, Appellant cites *Commonwealth v. Lane*, 555 A.2d 1246 (Pa. 1989) (holding lack of a prompt complaint is a factor in evaluating the credibility of witnesses).

The Commonwealth points out that in reviewing a weight of the evidence claim, an appellate court will not substitute its assessment of credibility for that of the fact-finder. *Commonwealth v. Cramer*, 195 A.3d 594, 600-01 (Pa. 2013); *see also Commonwealth v. Kane*, 10 A.3d 327, 332-33 (Pa.Super. 2010) (holding weight of the evidence claims cannot be based upon reassessing the credibility of the factfinder). Moreover, the standard for abuse of discretion is quite high: "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Weakley*, 972 A.2d 1182, 1188-89 (Pa.Super. 2009).

The trial court noted that the jury heard the testimony of ten witnesses, several of whom confirmed that the victims had disclosed Appellant's sexual conduct to them earlier. As the court correctly noted, credibility determinations "are within the exclusive province of the jury." *Commonwealth v. Izurieta*, 171 A.3d 803, 809 (Pa.Super. 2017) (citing *Commonwealth v. Crawford*, 718 A.2d 768, 772 (Pa. 1998). The jury was free to believe all, part, or none of the evidence. *Commonwealth v. Burton*, 2 A.3d 598, 601 (Pa.Super. 2010). The trial court found that the jury's verdict was not contrary to the evidence and did not shock the conscience. Trial Court Opinion, 6/6/18, at 30. Based on the foregoing, the Commonwealth argues that there is no merit in Appellant's weight of the evidence claim. We agree, and find no abuse of discretion on the part of the trial court. This claim fails.

Finally, Appellant claims that the sentence imposed by the trial court was unduly harsh and excessive. The law is well-settled that sentencing is within the discretion of the trial court and should not be disturbed absent a clear abuse of discretion. *Commonwealth v. Antidormi*, 84 A.3d 736, 760 (Pa.Super. 2014). An abuse of discretion is not merely an error in judgment. An appellant "must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision." *Commonwealth v. Coulverson*, 34 A.3d 135, 143-144 (Pa.Super. 2011) (citing *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa.

2007)) ("An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice bias or ill-will, or such a lack of support as to be clearly erroneous.").

Moreover, Appellant presents a challenge to the discretionary aspects of his sentence, which does not entitle him to a right of review. ***Commonwealth v. Dempster***, 187 A.3d 266, 272 (Pa.Super. 2018). Such a claim is treated as a request for permission to appeal. This Court has previously addressed the procedural requirements an appellant must meet before a court can hear the merits of a discretionary sentencing challenge:

> Before [this Court may] reach the merits of [a challenge to the discretionary aspects of a sentence], we must engage in a four part analysis to determine: (1) whether the appeal is timely; (2) whether Appellant preserved his issue; (3) whether Appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence [***see*** Pa.R.A.P. 2119(f)]; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code. . . . [I]f the appeal satisfies each of these four requirements we will then proceed to decide the substantive merits of the case.

***Commonwealth v. Austin***, 66 A.3d 798, 807-08 (Pa.Super. 2013).

In this case, Appellant filed a timely post-sentence motion raising this issue. He provided a separate statement purporting to comply with Rule 2119(f), specifying where the sentence fell in the sentencing guidelines, what provision of the sentencing code was allegedly violated, what fundamental norm the sentence violated, and the manner in which it violated the norm.

Appellant maintains that a substantial question is involved because the sentence imposed was harsh and excessive under the Sentencing Code, and further, that his sentences should not have been imposed consecutively when his crimes were committed concurrently.

A bald claim that a sentence is excessive usually does not raise a substantial question. Furthermore, a claim that the sentences should not have been imposed consecutively raises a substantial question in "only the most extreme circumstances, such as where the aggregate sentence is unduly harsh, considering the nature of the crimes and the length of imprisonment." *Commonwealth v. Caldwell*, 117 A.3d 763, 769 (Pa.Super. 2015). Appellant argues that his sentence falls within the latter category because it is a *de facto* life sentence. *See Commonwealth v. Raven,* 97 A.3d 1244 (Pa.Super. 2014). We find that Appellant has raised a substantial question and we will address the merits of his sentencing claim. *See e.g.*, *Commonwealth v. Swope*, 123 A.3d 333, 338-39 (noting claim that the imposition of consecutive sentences resulted in an excessive aggregate sentence may raise a substantial question).

Appellant contends that many of the crimes of which he was convicted occurred simultaneously and as part of two isolated episodes. He argues that by imposing consecutive sentences, the sentence imposed exceeds the statutory maximum for any one of the offenses. He maintains that offenses committed in a single criminal episode were "doubly, and triply, counted

against" him, resulting in a *de facto* lifetime sentence. Appellant's brief at 44. Appellant does not cite any authority in support of such a premise, nor does he develop his argument in this regard. Failure to develop an issue in an appellate brief results in waiver. **See** Pa.R.A.P. 2119(a) and (b) (requiring a properly developed argument for each question presented including a discussion of and citation to authorities in appellate brief); **see also Commonwealth v. Knox**, 50 A.3d 732 (Pa.Super. 2012) (reiterating failure to cite to legal authority to support argument results in waiver).

Appellant also directs our attention to **Coulverson**, **supra**, where this Court remanded for resentencing after concluding that the aggregate maximum sentence was unreasonable on the facts therein.[3] Appellant argues that consecutive sentencing herein resulted in a sentence that was inconsistent with the gravity of the offense, the protection of the public, and his rehabilitative needs.

We find **Coulverson** distinguishable on its facts. Our remand for re-sentencing in that case was due to the trial court's failure to discuss sentencing factors and explain its reasons on the record for the sentence imposed. After noting that it had reviewed the presentence report, and listened to what everyone had to say, the court simply stated: "The destruction you've caused

---

[3] Appellant represents, albeit incorrectly, that our reversal in **Commonwealth v. Coulverson**, 34 A.3d 135 (Pa.Super. 2011), was based on the consecutive nature of the sentences imposed.

- 15 -

to [the victim], her family, her friends, your family, your friends, the future generations of all those people will last forever." ***Coulverson***, ***supra*** at 144. This Court found "scant consideration of anything other than victim impact and the court's impulse for retribution on the victims' behalf." ***Id***. at 148. Furthermore, we found the maximum sentence "clearly unreasonable," and noted that in imposing that sentence, the trial court did not seem to understand that it had discretion with regard to the maximum sentence. ***Id***. at 150.

Those concerns are not present herein. Appellant was convicted of multiple counts of, *inter alia,* rape and indecent assault of minors, and the sentences imposed did not exceed the statutory maximum for each offense. Additionally, as the trial court correctly noted, it could have imposed a much lengthier sentence given the number and nature of crimes of which Appellant was adjudged guilty.

The trial court stated that it reviewed the presentence report, mental health evaluation, sentencing guidelines, and the Commonwealth's sentencing memorandum. It considered and discussed the favorable testimony from Appellant's grandmother and stepmother, as well as the testimony of the victims. The court clearly identified the competing interests and articulated its reasoning. The sentence was imposed after careful consideration of all relevant sentencing factors including the impact on the victims, the safety and well-being of the community, and Appellant's rehabilitative needs. With

regard to the aggravated range sentences for rape and unlawful contact, the court explained on the record why the sentences were appropriate. We find nothing in the record to indicate that the court abused its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/19